Barry *v.* City of St. Louis.

———◦—••••—▷———

BARRY, Respondent, *vs.* CITY OF ST. LOUIS, Appellant.

1. Municipal corporations are not liable for damages occasioned by the negligence of contractors. To create such liability, the relation of master and servant must exist.

*Appeal from St. Louis Court of Common Pleas.*

*John C. Richardson,* for appellant. The city is not responsible for any injury sustained by the plaintiff through the negligence of the contractor. To make one person liable for an act or omission of another, the latter must be the servant of the party sought to be made liable. *Milligan* v. *Wedge,* 12 Ad. & Ell. 737. *Quarman* v. *Burnett,* 6 Mees. & Wels. 497. *Rapson* v. *Cubitt,* 9 Mees. & Wels. 710. *Reedie,* also *Howitt* v. *London & N. W. Railroad Co.,* 4 Wels. Hurl. & Gord. 248–258. *Knight* v. *Fox & Henderson,* 1 Eng. Law & Eq. Rep. 480, decided in November, 1850. *Allen* v. *Hayward,* 53 Eng. Com. Law Rep. 959.

The case of *Bush* v. *Steinman*, 1 Bos. & Pul. 403, has been repeatedly overruled in the English courts. The case of *Leslie* v. *Pounds* is unlike the present. It was expressly decided upon the ground that, though the defendant had leased the property, yet, the lessee not being then in possession, and the repairs being conducted under the superintendence of the defendant, he was responsible. See the opinion of Littledale, J. in *Laugher* v. *Pointer*, 5 B. & C. 547. The city of St. Louis could not have maintained an action of trespass for any injury to the sewer during its construction. The possession was in the contractor. *Duke of Newcastle* v. *Clark*, 4 E. C. L. R. 227. The leading American cases, invoked to sustain the first instruction given for the plaintiff, are *Lowell* v. *Boston and Lowell Railroad Company*, 23 Pick. 31. *Mayor of New York* v. *Bailey*, 2 Denio, 433. The case in 23 Pick. disposes very summarily of the question, upon the authority of *Bush* v. *Steinman*, which has been repeatedly overruled. The case in 2 Denio also relies upon *Bush* v. *Steinman*, but upon an analysis of the facts and arguments, it will be observed that it does not sustain the said instruction. In that case, the city of New York was engaged in the establishment of the Croton Water Works, as a private corporation, for emolument, &c. ; and a very just distinction has been taken between the acts of municipal corporations in the discharge of their legislative functions, and acts done by them in the prosecution of a private enterprise. This distinction has been recognized by this court in *Gurno* v. *The City*, 12 Mo. 414.

. *John A. Kasson* and *Duke*, for respondent. In the eye of the law, the negligence, unskilfulness and carelessness of the agent or contractor under the defendant, are the negligence, unskilfulness and carelessness of the defendant, and the maxim, *respondeat superior*, applies. *Bush* v. *Steinman*, 1 B. & P. 407–8. *Littledale* v. *Lonsdale*, 2 H. Bl. 267, 299. *New York* v. *Bailey*, 2 Denio, 433. *Lowell* v. *Boston and Lowell R. R. Co.*, 23 Pick. 24, 31. In the case at bar, the superintendence of the city is expressly reserved. The liabili-

Barry *v.* City of St. Louis.

ty of the defendant, in cases of negligence and carelessness, does not appear to have been questioned in the court below. The following authorities amply establish the principle, if doubted. *Thayer* v. *City of Boston*, 19 Pick. 516. *Mayor*, &c., v. *Furze*, 3 Hill (N. Y.) 612. *Chestnut Hill*, &c., v. *Rutter*, 4 Serg. & R. 6. *Goodloe* v. *Cincinnati*, 4 Ohio, 414, 513. *Rhodes* v. *Cleveland*, 10 Ohio, 160. *Riddle* v. *Proprietors*, &c., 7 Mass. 187. *Yarborough* v. *Bank of England*, 16 East. 6. The same principle is conceded by implication in the case of *Gurno* v. *City of St. Louis*, 12 Mo. 424. Angell & A. on Corporations, pp. 303, 308.

*Richardson*, in reply. The case in 2 Denio has already been noticed and is reviewed in 12 Mo. Rep. 414. The case in 23 Pick. was against a private, not a municipal corporation. The point was almost conceded by the defendant's counsel and was disposed of by the court in a paragraph, upon the authority of *Bush* v. *Steinman*, which has been so often repudiated. The case of *Lonsdale* v. *Littledale*, 2 H. Black. 267, decided in 1793, has no application to the case at bar. There, the injury was charged to have been committed by the defendant's servants in the working of a mine. In *Yarborough* v. *Bank of England*, the only question was, whether an action of tort could be maintained against a corporation. In the case of *Thayer* v. *City of Boston*, it was only held that the city was liable for acts done by its authority, where similar acts would warrant an action against an individual. So far as that case has any application to the present discussion, it is in point for the appellant. In the case in 4 Serg. & Raw. 6, the question was, whether a corporation could be guilty of a tort, for it was admitted that the company gave authority to their servants to do the act complained of. In *Bailey* v. *Mayor*, &c., 3 Hill, 539, the court predicates the liability of the defendant on the ground that the city, in making the Croton Water Works, was acting in a private capacity, not as a municipal corporation. The case of *Mayor*, &c., v. *Furze*, 3 Hill, 612, only decides that the city, having made sewers, was bound to keep them in

repair. The question of the liability of the city, for the acts or negligence of a contractor, was not raised. The case in 7 Mass. 187, and the Ohio cases, do not touch the question. For a long time, it was doubted whether a corporation could be sued for a tort, but the courts now hold that their liability for the acts of their servants and agents is the same with that of individuals. The law is well established, that a private person is not responsible for the acts or negligence of a contractor under him. Neither law, justice, nor policy requires that the city should be liable, when an individual would not be.

RYLAND, Judge, delivered the opinion of the court.

The city of St. Louis contracted with Peter Brooks, for the construction of the Biddle street sewer. The general right was reserved in the contract, to the city engineer, to inspect the work, and watch the progress of its execution. The contractor was, for a consideration agreed upon, to furnish the materials and do all the work, including the necessary excavations. In the progress of the work, a deep trench was cut, and the plaintiff's intestate, Richard Barry, in his petition, charged that, as he was carefully walking in the night time down Biddle street from Broadway to the boat on which he was employed, he fell into the trench and broke his leg; that he was a stranger in the city and the accident occurred without any negligence on his part, but on account of the gross negligence of the defendant, in not furnishing lights or other warnings of the exposed condition of the street. At the instance of the plaintiff, the court instructed the jury that the city was liable for any injury the plaintiff had sustained by the negligence of the contractor, in not putting up sufficient barriers to warn or guard persons against the danger of attempting to pass down Biddle street in the neighborhood of the excavation. The propriety of this instruction raises the main question for the consideration of this court.

1. It was for a long time doubted, and even denied that

corporations could be sued for a tort, as they could not speak, except through their corporate seal; and the great struggle in the courts was, to put them on the same footing of liability as natural persons. Necessity requires that they should employ officers, servants and agents, and do their work oftentimes through contractors, and it is now well settled that, in many cases, corporations can be sued for a tort; that they can be, guilty of negligence and be made responsible in damages in many cases, where natural persons would be liable, under like circumstances, for the acts or negligence of their agents or servants. But in our opinion, neither law nor policy requires the courts to go beyond the point they were so long reaching, by holding corporations liable, when, under similar circumstances, individuals would not be liable, for the acts or negligence of their servants, agents or contractors. It may be stated as a general proposition, that one person is not liable for the acts or negligence of another, unless the relation of master and servant exists between them; and when an injury is done by a party exercising an independent employment, the person employing him is not liable. The only enquiry is, as to the relation between the parties. In support of this doctrine, the following authorities are cited: *Milligan* v. *Wedge*, 12 Adolph. & Ellis, 737. *Allen* v. *Hayward*, 53 E. C. L. Rep. 959. *Quarman* v. *Burnett*, 6 Mees. & Wels. 497. *Rapser* v. *Cubitt*, 9 Mees. & Wels. 710. *Reedie*, also *Hobbitt* v. *London Railw. Co.*, 4 Excheq. 244. *Knight* v. *Fox & Henderson*, 1 Eng. Law and Equity Rep. 480. In *Milligan* v. *Wedge*, the defendant, who was the buyer of a bullock, employed a licensed drover to drive the bullock from Smithfield, for, by the laws of London, no one but a licensed drover could be so employed: the drover employed a boy to drive the bullock to the owner's slaughter pen, and through the carelessness of the boy, the mischief complained of was done by the bullock. It was held, that the owner was not liable; for the boy was not his servant, nor would he have been liable, if the drover, who had contracted to drive the bullock, had been driving

at the time of the injury. Coleridge, Judge, says : "the true test is, to ascertain the relation between the party charged and the party actually doing the injury ; unless the relation of master and servant exists between them, the act of one creates no liability on the other." Williams, J., says : "the difficulty always is, to say whose servant the person is that does the injury ; when you decide that, the question is solved."

The defendant, in *Rapser* v. *Cubitt*, was employed to make certain alterations in a house, including the preparation and fixing of gas-fittings. He made a sub-contract with B., a gas-fitter, to execute this portion of the work ; in the course of doing it, through B.'s negligence, the gas exploded and injured the plaintiff ; and for this injury, the suit was brought. *Held*, that B. was a contractor under the defendant and not his servant, and that the action could not be maintained, but the plaintiff must seek his redress against the gas-fitter.

The Court of Exchequer, in *Quarman* v. *Burnett*, says : "the liability, by virtue of the principle of relation of master and servant, must cease, where the relation itself ceases to exist, and no other person than the master of such servant can be liable, on the simple ground that the servant is the servant of another, and his act the act of another ; consequently, a third person, entering into a contract with the master which does not raise the relation of master and servant at all, is not thereby rendered liable."

In the case of *Allen* v. *Hayward*, the defendants were appointed commissioners under an act of parliament, for improving the navigation of a certain water course. They let out a part of the work to a contractor, with a provision in the contract, that the work should be done in such a manner as the defendants' surveyor, from time to time, should direct ; in the construction of the work, the contractor built a dam, which was so negligently made that it gave way, and the plaintiff's land was flooded ; but the court held the defendants not liable.

In the case of *Reedie*, also *Hobbitt* v. *London N. W. Railway Co.*, the defendants, having authority, by their char-

ter, to construct a railway, contracted with certain persons to make a portion of the line, reserving in the contract the general right of watching the progress of the work, and of dismissing incompetent workmen, if the contractors employed such. During the progress of the work, by the negligence of some of the contractors' workmen, a heavy stone fell and killed the plaintiff's husband ; for which act, suit was brought under the statute of 9 and 10 Victoria, ch. 93. It was insisted for the plaintiff that, as the defendants had the power of dismissing the contractors' workmen, the workmen were their servants, and that they should be responsible for the injury ; but the court ruled that they were not liable. In this case, the court overrules the case of *Bush* and *Steinman,* and also denies the distinction between moveable and fixed real property, adverted to in *Laugher* v. *Pointer,* and *Quarman* v. *Burnett.*

The case of *Knight* v. *Fox & Henderson,* is a very recent case, and reviews many of the authorities on this subject. The London and Blackwell Railway Company, for the purpose of making a branch line of their road, entered into a contract with Brassey to make it. Brassey entered into a sub-contract with the defendants to do a portion of the work. The defendants had, in their general employment, Cochrane, a surveyor, to manage their business in London, at a fixed annual salary ; on their obtaining the sub-contract from Brassey, they made a contract with Cochrane to supply the scaffolding necessary for the work, they agreeing to furnish the materials, including lights, for which they agreed to pay Cochrane a sum independent of his annual salary. In the prosecution of the work, it became necessary to erect a scaffold with one of its poles resting on a sleeper attached to the pavement of the highway ; a single light was placed there at night, to warn passengers of this obstacle, and being insufficient for that purpose, the plaintiff fell over the pole and broke her leg. It was attempted to distinguish this case from many others bearing on the subject, because the defendants were bound to furnish the materials and the necessary lights, but the court held, that Cochrane was

not their servant, but a contractor under them, and that they were not responsible for his negligence.

In some of the English cases, a distinction was taken between fixed and personal property, but in many of the late cases, the propriety of the distinction is denied. See *Milligan* and *Wedge, Allen* and *Hayward, Reedie* v. *London N. W. Railway Co.* In our opinion, the question as to liability is is not controlled or influenced by any such distinction, or any such consideration.

The counsel, in all the cases to which we have referred, seeking to maintain the position contended for by the plaintiff in this present case, have relied upon the case of *Bush* v. *Steinman*, 1 Bos. & Pul. 403, and it has been pressed with zeal by the plaintiff's counsel in this case. That case, apart from its age, is not entitled to much respect. Its correctness has been so often doubted, if not denied : it has been so much limited, modified and explained, that it has no longer the weight of an authority. I feel not inclined to yield to it, in the face of so many more recent cases, illustrated by very able judges in England, and enforced by the most satisfactory reasoning.

The case of *Lowell* v. *Boston and Lowell Railroad Co.*, 23 Pick. 24, cited by the plaintiff, was against a private corporation, not a municipal one. The point was virtually conceded in the argument, and the court, in a few words, disposes of it, upon the authority of *Bush* v. *Steinman.*

The case of *Mayor of New York* v. *Bailey*, 2 Denio, 433, cited by the plaintiff, was reviewed by this court in *Gurno* v. *City of St. Louis*, 12 Mo. Rep. There the city of New York engages, under a special act of the legislature, in the construction of the Croton Water Works, as a private corporation, in a private enterprize for emolument. It was not undertaken by the city in its municipal character, or in the discharge of any legislative functions, and the court of errors held, that the corporation was liable for the acts of its agents employed to do its business for its own private benefit, the same as any other corporation or individual would be. Many cases

Barry *v.* City of St. Louis.

have been cited by the counsel for the plaintiff. They have been examined, and authorities can be found on both sides of this question. In Story on Agency, the cases on this subject cited by the learned author are numerous. See Story on Agency, §453, *b. c. d. e.* I will only quote a principle, extracted from the opinion of Mr. Baron Parke, in the case of *Quarman* v. *Burnett*—a principle uniformly adhered to, in all the later cases. Speaking of the liability arising from the relation of master and servant, the Baron proceeds : " Consequently, a third person, entering into a contract with the master, which does not raise the relation of master and servant at all, is not thereby rendered liable ; and to make such person liable, recourse must be had to a different and more extended principle, namely, that a person is liable not only for the acts of his own servant, but for any injury which arises by the act of another person, in carrying into execution that which that other person has contracted to do for his benefit. That, however, is too large a position, as Lord Chief Justice Eyre says, in the case of *Bush* v. *Steinman*, and cannot be maintained to its full extent, without overturning some decisions, and producing consequences which would, as Lord Tenterden observes, shock the common sense of all men."

In the case before us, the city, in order to protect and preserve the health of its citizens, by its corporate powers, passes an ordinance to construct a sewer within its corporate limits—a mere sanatary measure—not going miles beyond its corporate limits and engaging in a private enterprize to make money, although it may redound to the benefit of the citizens of the city, as the city of New York did, in constructing the Croton Water Works. Under this ordinance, a contract is made. The contractor is to furnish every thing—the street in which the sewer is to be built is given up to him, the city retaining the right and power to suspend the work, to watch over its execution, &c. It was the duty of the contractor to have put up the necessary barriers to warn persons of the danger. During the progress of this work, the possession of the sewer was neces-

sarily in the contractor, and not in the city, and for this reason, the city could not have maintained trespass for any injury to the sewer, during its construction. *Duke of Newcastle* v. *Clark*, 4 E. C. L. Rep. 227. For any injury resulting from his negligence, the contractor was clearly responsible, and, even admitting that the city might be liable for his negligence, he ought to respond for whatever the city would be compelled to pay, by reason of his negligence, and to avoid circuity of action, it would be better to make the contractor liable in the first place. In actions of this character against corporations, the prejudices of jurors may be easily excited, and men are apt to be not very scrupulous, when they are giving away other people's money. In our opinion, however, sound policy indicates that the contractor alone should be held responsible, and that he should realize his responsibility. In making sewers and other improvements in the streets, he has the immediate charge of the work, and the temporary occupancy of the street in which the work is progressing. He is upon the ground with his materials and servants, and can more securely and conveniently than any officer of the city, protect his work from injuring others. The public would be better protected from injuries of the character here complained of, by holding the contractor liable, and teaching him that he alone is responsible, and that the city does not stand between him and the person injured by his negligence.

Other points were assigned for error and pressed by the counsel for the appellant ; but they will not be noticed, since the main question we have considered disposes of the case. Judge Gamble concurring herein, the judgment below is reversed. Scott, J., dissenting.