MORGAN, Defendant in Error, v. BOWMAN, Plaintiff in Error.

1. Where one employs a person, carrying on a distinct trade or calling, to perform certain work for him, the employee being independent of the control of the employer, the latter is not responsible for any injury to third persons caused by the negligence of the employee or his workmen.

2. Where, however, the one employed to superintend the work to be done, is subject to the control of his principal, and is paid for his services by day wages, the principal is responsible for injuries to third persons caused by such employee or his servants.

3. *Quere*, as to the soundness of the doctrine laid down in Wood v. Steamboat Fleetwood, (19 Mo. 529,) that an allegation of the value of property claimed by plaintiff, or alleged to have been destroyed, &c., by defendant, is not admitted if not denied.

*Error to St. Louis Circuit Court.*

In this suit, originally brought by Morgan against Bowman and one Greer, plaintiff sought to recover compensation for injuries sustained by him through the alleged fault of defendants, in carelessly and negligently causing certain goods belong-

ing to plaintiff to be destroyed by fire when stored in a warehouse belonging to defendant (Bowman). The alleged negligence consisted in the careless management of a fire on the roof of said warehouse, used in boiling tar, pitch and other materials; the defendant (Bowman) having employed said Grier to superintend the placing of a *composition* roof on said warehouse. The evidence, showing the relation that Grier sustained to Bowman, is sufficiently set forth in the opinion of the court. The suit was dismissed as to Greer.

The petition contained the allegation, that on, &c., plaintiff " was the owner of divers goods and chattels of great value, to-wit, forty-five packages of merchandise of great value, to-wit, of the value of four thousand five hundred and ninety dollars," &c. There was no denial in the answer of this allegation; nor was there any evidence given on the trial of the value of the property destroyed.

It is not necessary to set forth the evidence given on the trial, as the only question raised upon that evidence was as to the responsibility of defendant (Bowman) for injuries caused by the negligence and carelessness of Greer.

The questions of law discussed in this court arise upon the following instruction given on the motion of plaintiff : " It being admitted by the pleadings that plaintiff was the owner of goods of the value of $4590, which were stored in a house on Broadway ; that defendant (Bowman) undertook to repair the roof thereon, and employed and retained a person in that behalf, and such person engaged in said work; that while the same was progressing, fire and combustible material were used, by the person so employed by Bowman, near the roof of said house, the same not being fire-proof ; that there was about and upon said house a large quantity of such combustible material at the time of using said fire, and the same was communicated to said material, and thereby said house and plaintiff's goods were consumed; if the jury find that one Greer was the person so employed, and was by such employment to superintend said work, and to be paid by said Bowman by the day

therefor; that said Greer, at the time of the burning said house and goods was so employed by the day, and was so superintending said work, and was therein guilty of gross negligence or unskillfulness or recklessness, and by means thereof said house and goods were burnt and destroyed, the jury will find for plaintiff the value of said goods, with interest thereon from the commencement of this suit."

There were certain instructions asked by defendant, and refused by the court, which it is unnecessary to set forth.

The jury found for plaintiff, and assessed his damages at $4590.

*M. L. Gray*, for plaintiff in error. The law is well settled that where one does work for another, as a contractor, the employer is not responsible for the acts of the contractor or those acting under him. Also, that where an injury is done by a person exercising an independent employment, the person employing him is not responsible. (Parsons on Cont. 86; Barry v. City of St. Louis, 17 Mo. 121; Milligan v. Wedge, 12 Adol. & Ellis, 737–40; Allen v. Haywood, 53 Eng. C. L. R. 959; Quarman v. Burnett, 5 Mees. & Wels. 499; Rafron v. Cubit, 9 id. 710; Redie & Hobbitt v. Lond. Railway Co. 4 Exch. 244; Knight v. Fox *et al.*, 1 Eng. L. & Eq. R. 480.) 1. Greer was a contractor under defendant, and not his servant in any such sense as to make defendant liable for his acts. The true test of the existence of master and servant is the right and power of the employer to direct and control the employee. (Parsons on Cont. 86, and authorities above cited.) No such right was reserved to defendant in the contract between him and Greer, nor was any such control in fact exercised by defendant. The mere mode of payment *is not and can not be* the criterion or test by which to determine the relation of defendant to Greer. The employment of Greer at day wages will not make defendant liable, unless by the contract defendant reserved to himself the right of controlling or directing the work, or unless in point of fact the defendant did direct or control the work. (Parsons on Cont. 87, 93.) 2. Whether

Morgan v. Bowman.

Greer was a contractor under defendant or his servant, was a question of fact that should have been submitted to the jury to find on the evidence. (Parsons on Cont. 92; 1 Moody & Robinson, 494.) The instruction given by the court took this question from the jury, and assumed that the employment of Greer, at daily wages, made him the servant of defendant, so as to make defendant liable for Greer's acts and the acts of those he employed, without regard to the vital and essential fact whether defendant was to exercise or did exercise any control over Greer or those under him. 3. If Greer was not a contractor under defendant in such a sense as to exonerate him (defendant) from liability on account of Greer's carelessness or the carelessness of those employed by him, yet Greer, in doing the work, was in the exercise of an independent and distinct calling or employment that relieved defendant from all liability for his acts. (Parsons on Cont. 89, note *b.*; 12 Adolph. & Ellis, 40 C. L. R. 737; Barry v. City of St. Louis, 17 Mo. 121; De Forest v. Wright, 2 Mich. 368.)

*Glover & Richardson, Shepley* and *H. M. Jones*, for defendant in error. This case turns mainly upon the instruction given for the plaintiff in the court below; for, if there is no error in that instruction, and it left the question of liability of the defendant to be fairly passed upon by the jury, there is no ground for reversal, although some one of the instructions asked for by the defendant might, without legal impropriety, have been given. 1. It was not incorrect to rule, that the allegation of value in plaintiff's petition not being denied, was admitted. The decision of this question turns upon the meaning to be given to the term " material," in the 12th section of article 7 of the code, which provides that " every *material* allegation in the petition, not specifically controverted as heretofore required, &c., shall, for the purposes of the action, be taken as true." By section 7, art. 6, it is provided that " the answer of the defendant shall contain, in respect to each allegation of the petition controverted by the defendant, a specific denial thereof, or any knowledge thereof sufficient to form a belief."

35—VOL. XXII.

Under the old system of pleading, no *issue* was material unless it was decisive of the whole case. No *issue* could be taken upon allegations of value, in the common actions of assumpsit, trover, &c. The reason was, that the party denying the alleged value had no right, by " traversing such allegations by a formal traverse, to compel the plaintiff to prove more than he would be bound to prove, if the defendant had pleaded the general issue only," &c. (3 Saund. 207 *a*.) An allegation of some value was necessary, and in that sense it was then a *material* allegation; but of course it need not have been proved as alleged. Questions of values, amount of damages, &c., were really and truly *issues* before the jury, although not such, in strict legal language, upon the face of the pleadings. The new system of pleadings, established by the code, was designed to effect a fundamental change. The great object of this change was, as far as possible, to reduce the number of *issues*, so as to disencumber the *causes* to be submitted to the jurors for decision, by obtaining an admission of undisputed facts. In numerous instances, the value of goods delivered, or the items of an account, property conveyed, &c., would be well known to and peculiarly within the knowledge of the defendant; and unless he (the defendant) is disposed to put such value *in issue* by denial, there is not and there can be no reason why this failure to deny should not be taken as an admission. Why confine the meaning of the term *material allegation* to its meaning under the old system of pleading? So far as the question, what facts or allegations should be regarded as admitted is concerned, there seems to be no valid distinction between those allegations which go to the ground of the action, and those which go merely to the amount to be recovered. It is not contended that the mere claim to so much damages contained in the *ad damnum* clause, should be regarded as admitted unless denied. The prayer for relief is not a matter of allegation at all. The reasons are certainly very strong for holding that every allegation in a petition, not denied in the answer, is admitted, unless such allegation be *immaterial* in such

Morgan v. Bowman.

a sense that the defendant is entitled to have it stricken out on motion. This would furnish us with a *good test* by which to determine whether an allegation is or is not material in the sense of the code. It can not, of course, be pretended that an allegation of value, such as that assumed to be material in the instruction we are now considering, would be stricken out on motion. Although there are some dicta in New York, in construction of a similar (the same, indeed) provision in the New York code, intimating that the rule is, as it will undoubtedly be contended by the opposite counsel to be, in this state, yet the only decision that has been made upon the point is directly in favor of the view now contended for by defendant in error's counsel. (See Archer v. Baudinet, 1 Code R., N. S.) This was an action to recover possession of personal property, and for damage for detention. Value of the property was alleged in the petition (and the allegation was not denied) to be fifty dollars. Woodruff, J., said: "For the purposes of this case, therefore, that sum ($50) is to be taken as the value of the property, and no other value could, with propriety, be adopted even by the jury." Perhaps some fancied distinction may be attempted to be set up between this case and the present one, on the ground that it was required by the code that the petition, &c., for the possession of personal property, &c., must contain a statement of the value of the property claimed, &c. To this it is answered that an *allegation of some value* must be made, in cases like the present, or the court would not consider a party plaintiff entitled to set in motion the machinery of the law. The party being, then, compelled to state some value, must, upon his oath, state the true value. We are aware that in a case lately decided, this court has intimated an opinion opposed to the doctrine we are now contending for. (See Wood v. Steamboat Fleetwood, 19 Mo. 529.) 2. The ruling of the court, in the remaining part of the instruction we are considering, is correct. I. The general rule is, that a principal or employer is liable for all the tortious acts of his agent, employee, or servant, done in course of the agent's or

servant's employment. This rule is generally stated thus : that the principal is liable, provided the relation of master and servant exists. This relation of *master and servant* exists in every case of agency unless the right of control or direction is taken away, so that any interference on the part of the principal would be a breach of a contract between the parties. II. The exception to the above rule is, that of one who engages by contract for the performance of work or business, and who, in the performance of that work, is engaged in a *distinct and independent calling*. III. The *calling or business* of the employee, in order to be *distinct and independent* in such a sense that the employer would not be liable for the tortious acts of the employee, except where those acts were specially authorized, must be, 1st. A separate and distinct calling or profession peculiar to those who engage in it ; as that of a builder, brick-maker, carpenter, &c. (Milligan v. Wedge, 12 Ad. & El. 734–40 ; Laugher v. Pointer, 5 B. & C. 555.) 2d. It is necessary that the employee be employed in the performance of the work as contractor, i. e., that he take upon himself its performance, according to stipulations agreed upon, he not receiving mere wages for his services, or a salary, but being employed as a *job contractor*. (Martin v. Temperly, 42 B. 298, 312 ; Knight v. Fox, 1 L. & Eq. 474 ; Blake v. Ferris, 1 Selden, 62 ; Allen v. Hayward, 7 Q. B. 974.) 3d. The contract between the employer and the employee must be such that any interference with or exercise of control over the performance of the work, &c., would be a breach of such contract. (Allen v. Hayward, 7 Q. B. 974.) There may be reserved to the principal a right to inspect work done, or to dismiss incompetent workmen, or to suspend the performance of work. This alone would not make the principal liable, &c., provided there was no right under the contract to assume the general superintendence and control. (Reedie v. Railway Co. 4 Exch. 244, 258, per Rolfe, B. ; Barry v. City of St. Louis, 17 Mo. 121.) In no case has any principal escaped liability for the acts of his employee, except in case where such employee

Morgan v. Bowman.

was a job contractor, in the exercise of a distinct calling. And the payment of a person for his services, by paying so much per day, constitutes him merely an agent for doing the thing agreed to be done. It rests upon the defendant to show that Bowman, the defendant, had no right to control the performance of the work to be done by Greer. The proof shows that Bowman at first applied to Greer for estimates of the cost of repairing the roof of the row of buildings burned ; that Greer made out such estimates ; that Bowman, believing that the work could be done cheaper by doing it himself, hired Greer by *the day* to superintend the repairing, &c. ; that the materials were purchased and paid for by Bowman, besides showing that Bowman was privy to and authorized the boiling of the composition upon the roof. The plaintiff's instruction seizes hold of the fact, which is undisputed and uncontroverted, that Greer was employed by the day to superintend the repairing, &c., and founds upon it, together with facts admitted by the pleadings, the legal conclusion that the relation of master and servant existed, so that Bowman was liable for the acts of Greer. The fact that Greer was employed at day wages, is entirely inconsistent with his being a *contractor* by the job.

LEONARD, Judge, delivered the opinion of the court.

The questions discussed here, in the application of the rule, " respondeat superior," is, whether the defendant, the owner of the building for whom the work was being done, was responsible as master ; or whether Greer, whom the defendant had employed to have the work done for him, was alone liable, on the ground that the relation of superior and subordinate, within the meaning of the rule, did not exist between them. It was admitted in the answer that the defendant was the owner of the building ; that he had directed the roof to be repaired, and had engaged a person to have the work done, and the proof was, that the defendant declined employing Greer to do it *by the job*, on account of the price he asked, and employed him

by the day, at an agreed price ; that Greer engaged the hands, &c., (the defendant paying them) and superintended the work as it was being done. Upon this proof, the court substantially instructed the jury, that if Greer was the person employed by the defendant, and by his employment was to superintend the work and be paid therefor by the day, the defendant was liable for the damages to the plaintiff that resulted from Greer's negligence in the performance of the work. In this we concur, and of course the judgment must be affirmed.

The maxim to which we have referred is well settled, but the difficulty is in applying it to the circumstances of each particular case ; in other words, in determining what facts establish the relation of superior and subordinate, so as to subject the parties to the rule.

In the earlier English cases, (Bush v. Steinman, 1 Bos. & Pul. 404, and Sly v. Edgly, 6 Esp. 6,) it was declared, in respect to injuries occasioned by the negligent use of *real property*, that the owners were liable, whether the injury complained of were the acts of their own servants, or the acts of independent contractors, employed by the job. Accordingly, in Bush v. Steinman, where the owner of a house had employed a surveyor to do some work upon it, and there were several sub-contracts, and one of the workmen of the person last employed had put some lime in the road, in consequence of which the plaintiff's carrriage was overturned, it was held that the owner of the house was liable, though the person who occasioned the injury was not his immediate servant. This liability was not supposed to arise out of the relation to which we have been referring, but proceeded, as is stated by Justice Littledale, in his celebrated opinion in the case of Laugher v. Pointer, (5 Barn. & Cres. 560,) upon a supposed rule of law that " in all cases where a man is in possession of fixed property, he must take care that the property is so used and managed that other persons are not injured, and that, whether his property be managed by his own immediate servants or by contractors or their servants, the injuries done upon land or buildings are in

the nature of nuisances, for which the occupier ought to be chargeable, when occasioned by any acts of persons whom he brings upon the premises. The use of the premises is confined by law to himself, and he should take care not to bring persons there who do mischief to others." Subsequently, however, in Milligan v. Wedge, (12 Ad. & Ell. 737,) and in Allen v. Hayward, (7 Ad. & Ellis, N. S., 960,) this doctrine was questioned and finally overruled. In Reedie v. N. W. R. Co. (4 Exch. 250,) where the workmen of the contractors, to whom the Railway Company had let the work, reserving to themselves the power of dismissing any of the workmen for incompetency, in building a bridge, had caused the death of a person by negligently allowing a stone to fall, it was held, in an action against the company by the administrator of the deceased, that they were not liable, the court declaring that, after full consideration, they had come to the conclusion that there was no distinction, in point of law, in cases like that then under consideration, between fixed property and ordinary movable chattels, *unless, perhaps, in cases where the act complained of was such as to amount to a nuisance.* The doctrine of the early English cases, although recognized in Massachusetts, in Inhabitants of Lowell v. Boston & Lowell R. R. Co. (23 Pick. 24,) and in Earle v. Hall, (2 Metc. 353,) has been questioned in New York, (Fish v. Dodge, 4 Denio, 411,) and overruled in this state, in Barry v. City of St. Louis (17 Mo. 121.) It is not material in the present case, however, as the plaintiff's right of recovery was not put in the court below, nor is it put here, upon any principle peculiar to real property, but was made to turn exclusively upon the question whether the relation of superior and subordinate subsisted between the defendant and Greer, or whether the putting the roof upon the house was done by him as job work, under a contract with the owner for that purpose ; in other words, whether Greer was the defendant's servant, in respect to this work, or an independent job contractor. It has been justly remarked that questions of liability, for the negligence of a servant, assumed one of two

forms—either, it being clear that the wrongdoer is somebody's servant, the question is, whether he is the defendant's ; or, the doubt is, whether he acted in his own behalf, being no one's servant in the particular affair in which the negligence is shown, and these questions have been much discussed in the courts of justice ; and although the present is not one of any great nicety, yet we may be allowed to refer for a moment to the leading cases upon the subject. In Laugher v. Pointer, to which we have already referred, where the owner of a coach had engaged of a livery stable keeper horses and a driver for the day, the question was, whether the livery stable keeper or the person who hired the horses and driver was responsible for an injury occasioned by the negligent conduct of the driver. The judges before whom the case was argued, gave separate and elaborate opinions, and exhausted—Judge Story tells us— the whole prior learning on the subject ; but the point was left unsettled, as not only the court of queen's bench, but the twelve judges differed upon it. Afterwards, in 1840, the question arose again in the case of Quarman v. Burnett, (6 M. & W. 499,) in the court of exchequer, where it was decided that the hirer was not liable ; and Parke, Baron, in delivering the opinion of the court, said : "Upon the principle that *qui facit per alium, facit per se*, the master is responsible for the acts of his servants, and that person is undoubtedly liable who stood in the relation of master to the wrongdoer—he who had selected him as his servant, from his knowledge or belief in his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey."

The word servant ordinarily indicates a person hired for wages, to work as the employer may direct, and the control which thus exists in the superior over the subordinate seems to be the principle referred to in the above extract, limiting and defining the cases in which the rule to which we have been referring is applicable. And it is accordingly held, that where one employs a person carrying on a distinct trade or calling, to perform certain work for him, independent of the control of

the employer, the latter is not responsible for any injury caused by the negligence of that person or his workmen. There are many cases in the books in which this rule has been applied, and it is upon this principle that the defendant places his claim of irresponsibility for the damage here complained of. A butcher bought a bullock in Smithfield market, and employed a licensed drover to drive it home, and the driver employed a boy, through whose negligence the bullock injured the plaintiff's property, and it was held that the butcher was not liable, as the drover exercised a distinct calling, and the boy, who did the mischief, was his servant, not the servant of the butcher. (Milligan v. Wedge, 12 A. & E. 737.) A builder was employed to make certain alterations in a club house, to do which he made a sub-contract with a gas-fitter, through the negligence of whom the gas exploded and injured the plaintiff, and the builder was excused from liability on the ground that the relation of master and servant did not exist between him and the party causing the injury. (Rapson v. Cubitt, 9 M. & W. 710.) A brig which was towed at the stern of a steamboat, employed in the business of towing vessels in the Mississippi, below New Orleans, was, by the negligence of the master and of the steamboat, over whom those in charge of the brig had no control, brought in collision with a schooner lying at anchor in the river, and the owners of the brig were held not liable for the damage occasioned by the collision, for the reason that the master and crew of the steamboat were not the servants of the owner of the brig—that they were not appointed by him, and did not receive their wages from him, and were not subject to his order or control. (Spraul v. Hemingway, 14 Pick. 71.) In all these cases, the employer had parted with the whole control over the work and the workmen; but here, there is nothing of the kind. Greer was not employed as a job man to put the roof upon the house, the defendant divesting himself, by engagement, of all right of control; and there is no proof to that effect. He was employed as the defendant's agent to have the work done by hands to be employed in

behalf of the defendant for that purpose, and to superintend the execution of it. His engagement was by the day, and he was paid accordingly. He was bound to receive his orders, in respect to the work, from the defendant, and to obey them, and was subject to be dismissed at any moment for misconduct. It is difficult to imagine a clearer case upon the proof of the relation of superior and subordinate, within the meaning of the maxim. Without, however, any reference to the sufficiency of the proof, which was a matter for the jury, it is sufficient, as a matter of law, to create that relation, that Greer, in the language of the instruction, was engaged to superintend for the defendant the putting on of the roof, and to be paid therefor by the day. Under these circumstances, he can not be allowed to escape from his own just responsibility to others, because he omitted, in point of fact, to exercise the control over his agent that he undoubtedly possessed. The latter, however, may be liable to the *former* for the damage that has resulted ; but that question can not be decided here.

The judgment is affirmed.