ADMINISTRATOR OF JOHN T. CHAMBERS v. THE OHIO LIFE INSURANCE AND TRUST CO.

1. The mere employment of another to do an act, in itself innocent and lawful, but from the doing of which, by want of proper care, injury may result to a third person, does not make the employer responsible for such injury. A principal is only bound by the authorized acts of his agents; the power of the agent to charge his principal, by doing a wrongful act, must be traced directly to his authority.

2. Where a party is in possession of fixed property, he is not responsible for injuries done to third parties by contractors or their servants, unless the act complained of be, in itself, unlawful, or is such as, in itself, to amount to a nuisance, and therefore unlawful. But if the thing to be done is lawful' and proper, and the wrongful act which causes injury, is negligence on the part of those actually employed, then their principal is responsible to third persons, and those acting as servants or agents are not responsible. A defendant not having personally interfered, or given any directions as to the performance of the work, but merely having contracted with a third person to do it, can not be held responsible for an unauthorized and unlawful act of such third person in the course of it.

3. The mere possibility, not contemplated, that a thing which ought to be done, but has been omitted, would prevent the consequences of an undoubted act of negligence, is not sufficient to charge the party, who has omitted to do such thing, with those consequences.

4. The city council has authority to punish nuisances by fine, and may define, in an ordinance, what is to be deemed a nuisance in the obstruction of a public street; but the city council can not, by any such ordinance, create a civil liability in a case where none exists by law.

5. The court is not required to send for absent parties, or their attorneys, whenever it may become necessary to instruct or reinstruct the jury upon questions of law.

GENERAL TERM.—On reservation, from special term, by Storer, J., for decision in general term, on plaintiff's motion for a new trial.

The facts sufficiently appear in the decision.

*A. H. McGuffey* and *Mills & Hoadly*, for plaintiff.

*Worthington & Matthews*, for defendant.

GHOLSON, J., delivered the opinion of the court.

The action in this case was brought under the statute which gives a remedy to the representatives of a person whose death has been caused by a wrongful act, or by negligence. The intestate of the plaintiff was killed by the fall, into the street along which he was walking, of a part of a heavy stone cornice, then being erected on the banking-house of the defendant. The stone-work of the building, including the cornice, was being erected under a written contract between the defendant and Isaac Graveson, which had annexed, as parts of it, certain plans, specifications, and drawings. The contract provided for the erection of the cornice, and, specifically, as to the kind and size of stone to be used. It was claimed that there was a discrepancy between the specifications and drawings, as to one of the stones to be used in the erection of the cornice; that, from this discrepancy, it became a matter of doubt whether the stone in question, which had an outward projection, was also to bear inwardly a certain distance. It was generally provided in the contract that the whole work to be done, and each and every part of it was " to be executed in strict accordance with the accompanying plans, specifications, elevations, sectional and working drawings, and according to the directions and perfect satisfaction of the superintendent." The superintendent was not named in the contract. The person who acted was employed by the defendant.

It appeared on the trial, that a portion of the cornice work projected outwardly from the face of the wall, and a short distance over the line of the street. The precaution required by the contract to prevent a fall of projecting stone-work, as shown by the specifications, and which, it appears, would have been amply sufficient, was that the stone supporting this projection should have an inward bearing one-third greater than its outward. If this was the contract, and what was prescribed to be done, then it appeared that the contractor and his workmen were guilty of negligence, in not giving the stone the inward bearing required, and the weight having

been subsequently put on without the contemplated counter-balance, the cornice fell.

The jury, under the instructions of the court, having found a verdict for the defendant, doubtless upon the ground that the contractor, and not the defendant, was liable for the act of negligence, which resulted in the death of the intestate of the plaintiff, the decision of a motion made for a new trial, has been reserved to the court in general term.

The mere employment of another to do an act in itself innocent and lawful, but from the doing of which, by want of proper care, injury may result to a third person, does not make the employer responsible for such injury. It has been well said, that it would be a rule too broad and too loose, and one which should be repudiated, that a person shall be responsible for any injury which arises in carrying into execution that which he has employed another to do. 3 Gray, 349–366, *Hilliard* v. *Richardson;* 1 B. & P. 404, 6 M. & W. 510. "The liability of any one, other than the party actually guilty of any wrongful act, proceeds on the maxim, ' *Qui facit per alium facit per se.*' " 4 Exch. 244, 255, *Reedie* v. *Railway Company;* 6 M. & W. 509. A principal is only bound by the authorized acts of his agent, and the power of the agent to charge his principal by doing a wrong, must be traced directly to his authority. 3 Kern. 599, 632, 634, *Mech. Bank* v. *N. Y. & N. H. Railroad Co.* It was supposed, at one time, that the occupiers of lands or houses as to acts done upon, or near, or in respect to their property, by persons whom they brought on their premises, were responsible on another principle. It was said: "The rule of law may be that, in all cases where a man is in possession of fixed property, he must take care that his property is so used and managed that other persons are not injured; and that, whether his property be managed by his own immediate servants, or by contractors or their servants. The injuries done upon land or buildings are in the nature of nuisances, for which the occupier ought to be chargeable, when occasioned by any acts of persons whom he brings upon the premises. The use of the premises is con-

fined by law to himself, and he should take care not to bring any persons there who do any mischief to others." 5 B. & C. 547, 560, *Laugher* v. *Pointer;* 6 M. & W. 510; 9 M. & W. 714. But it was subsequently held, and now appears to be clearly settled, that there is no such distinction, unless when the act complained of is such as, in itself, to amount to a nuisance, and, therefore, unlawful; the mere fact of its being done on or near a man's fixed property not giving it that character. If the wrongful act can not be treated as a nuisance; if, for example, it be a single act of negligence, there is no principle for making any distinction by reason of the negligence having arisen in reference to real and not personal property. 4 Exch. 244–257, *Reedie* v. *Railway Co.;* 5 Exch. 721, *Knight* v. *Fox;* 11 C. B. 73 E. C. L. 867, *Overton* v. *Freeman;* 13 C. B. 76 E. C. L. 182, *Peachy* v. *Rowland;* 9 Exch. 702, *Gayford* v. *Nicholls.*

Assuming that the act, that is, the putting the cornice on the building of the defendant, from the negligence in doing which the injury resulted, was, in itself, a lawful and proper act, was the relation between the parties concerned such as to make the defendant, and not the party with whom the contract was made, responsible? And here it is proper to advert to a distinction which has been noticed in one of the cases; if the act itself be unlawful, if it could not be done otherwise than in an unlawful manner, if it be a wrong and trespass, then it may well be that both he who orders or procures it to be done, and whe ho does it, will be responsible. 2 E. & B., 75 E. C. L. 767, *Ellis* v. *Sheffield Gas Co.* But if the thing to be done is lawful and proper, and the wrongful act which causes injury, is negligence on the part of those actually employed, then their principal is responsible to third persons; and those acting as servants or agents are not responsible. Nor can they have two principals not having a joint interest or connection; for the law does not recognize a several liability in two principals, who are unconnected. If they are jointly liable, you may sue either; but you can not have two separately liable. This doctrine

is of general application, irrespective of the nature of the employment; and, applying the principle to the present case, and assuming, as before stated, that the thing to be done was, in itself, lawful, it would be impossible to hold the defendant liable, without, at the same time, deciding that Graveson, the contractor to do the work, was not liable. 1 Selden, 48, *Blake* v. *Ferris;* 4 Exch. 244, 257, *Reedie* v. *Railway Co.;* 5 B. & C. 558. If he himself was the agent or servant of the defendant, he would not be liable, and so to excuse him from liability, and to fix the liability on the defendant, it must appear that the workmen actually engaged were the agents or servants of the defendant, and subject to his direction and control. For the test on this question has been said to be, whether those actually employed are under the direction and control of the party sought to be charged, at the time the wrongful act occurs? 4 E. & B. 82 E. C. L. 570, 577, *Sadler* v. *Henlock;* 3 Gray, 349, 352, 356, 360; 22 Mo. 538, 548, *Morgan* v. *Bowman.*

Having this test in view, and not regarding, for the present, some special considerations, which, it has been claimed, make a difference, but only the general features of the case, we think it quite clear that this was the case of work done by an independent contractor, employing his own workmen, and having their direction and control, and falls within the rule now well established, both in England and this country, that, under such circumstances, the contractor, and not the owner of the property, is responsible. 3 Gray, 349; 17 Mo. 121; 22 Mo. 538, *and cases in them cited.* The defendant contracted with Graveson to construct a cornice in a particular way—not to provide such stones, and so place them as to occasion injury to persons passing along the street. The act contracted to be done, and in the mode in which it was to be done, was not likely to cause injury, and that act alone was authorized by the defendant. 11 C. B. 73 E. C. L. 874. As said in the case of 13 C. B. 76 E. C. L. 185, *Peachy* v. *Rowland:* " The true result of the evidence here was, that the defendants had nothing whatever to do

with the wrongful act complained of. They employed somebody to do something, which might be done either in a proper or an improper manner; and he did it in a negligent and improper manner, and injury resulted to the plaintiff."

Are there, in this case, any special or particular circumstances which tend to produce a different result, and the effect of which has been disregarded, to the prejudice of the plaintiff, by the court in its charge, or the jury in their verdict? One circumstance upon which reliance has been placed, is that the work was to be done under the direction and to the satisfaction of a superintendent employed by the defendant. It appears to us that the principles already laid down, show that this circumstance can have no weight. Surely it can not be claimed that the superintendent of work to be done under a contract, was authorized to change the contract, and so change it as to impose a heavy responsibility upon his principal, and, in effect, authorize a wrongful act to be done, instead of the one in itself proper and lawful. Even had the superintendent given directions not in accordance with the provisions of the contract, they would not have been obligatory on the contractor, and he could neither shield himself from responsibility nor impose a responsibility on the owner of the property, by relying on such directions. But it does not appear that any directions were given. The utmost that can be claimed is, that the superintendent, instead of seeing that the terms of the contract were complied with, failed in his duty, and permitted a thing to be done which, under the contract, ought not to have been permitted. How this could make the defendant liable for the wrongful act of the contractor, or his workmen, it is difficult to comprehend.

The rule to be applied is, that a "defendant not having personally interfered or given any directions as to the performance of the work, but merely having contracted with a third person to do it, can not be held responsible for an unauthorized and unlawful act of such third person in the course of it." 11 C. B. 73 E. C. L. 873, *Overton* v. *Freeman.*

A defendant desirous that the terms of the contract should be strictly and faithfully complied with, and not being able to give personal attention, appoints an agent to see that it is done, but this agent not only has no power to allow a departure from the contract, but it is his first duty to see that there be no departure. Now, while it may be true that the owner of the property might be equally liable with the contractor if he personally interfered, and directed or countenanced the wrongful act complained of, the mere act of appointing such an agent, coupled with a neglect of duty on the part of the agent, surely can not be sufficient. If authority were required for this position, there are cases sustaining it both in England and in the United States. The cases of *Reedie and Hobbit* v. *Railway Co.*, on this point, are stronger cases than the present. There the company had the power to insist on the removal of careless or incompetent workmen, but it was said: "The workman is still the servant of the contractor only, and the fact that the defendants might have insisted on his removal, if they thought him careless or unskillful, did not make him their servant." 4 Exch. 258. The recent case of *Kelly* v. *Mayor of N. Y.*, is very similar to the present. There the contract contained the same clause: "The whole work to be done under the direction, and to the entire satisfaction, etc." The court said: "The clause in question clearly gave to the corporation no power to control the contractor in the choice of his servants; that he might make his own selection of workmen will not be denied. This right of selection lies at the foundation of the responsibility of a master or principle for the acts of his servant or agent." 1 Kernan, 432, 436. There are other cases to the same effect. 1 Selden, 48; 4 Selden, 222; 32 Eng. L. & E. 366, *Steel* v. *S. E. Railway Co.*

There is a class of cases which would appear to constitute an exception on the grounds of public policy, which it is proper to mention in this connection. As, where a public duty is imposed, and there is a liability attaching when not properly performed, this liability can not be shifted through the instrumentality of a contract on others; 3 Gray, 365. To

this class belongs 2 Denio, 433, *Mayor, etc. of N. Y.* v. *Bailey;* and to this, we think, unless there be something peculiar in the clause giving the control and direction of the work to an agent, must be assigned the case of *Stone* v. *The City of Cincinnati*, recently decided in our Supreme Court. The city is bound to keep the streets in order and repair, and is responrible for the mode in which this duty is performed; and, it may be, that so far as the public are concerned, she can not shift this liability on to the shoulders of a contractor, who may be, perhaps, entirely irresponsible.

There is another circumstance to which our attention has been called; the contract with Graveson was limited to the front stone-work; with which, as it progressed, brick-work was connected. This brick-work was done by persons employed by the defendant. It is claimed, that after the stone, which was required to project inside of the wall to a certain distance, had been put in the wall, without the required projection, there was a delay, or omission, to progress with certain brick-work; and had this brick-work been done, the cornice would not have fallen. For this neglect, the defendant, it is said, is liable. Without stopping to inquire how far such an hypothesis is sustained by the evidence, and whether the fall of the cornice would have been prevented by the brick-work in question, we think it quite clear that neither the plan of the building as shown by the contract, nor the intention of the parties engaged in its construction, showed any such purpose to be answered by the brick-work. Now the mere possibility, not contemplated, that a thing which ought to have been done, but has been omitted, would prevent the consequences of an undoubted act of negligence, is not sufficient to charge the party who has omitted to do such thing, with those consequences; the act of negligence being the act of another party, and the direct and immediate cause of the injury. Suppose, in such case, there were two contractors, and, in fact, there may have been in this instance, would it not be unjust to visit on the contractor for the brick-work a result of his negligence that he could not have contemplated. The principle that the proxi-

mate and not the remote cause of the injury is to be looked to, here applies with full force.

The same principle applies in another view of the facts of the case still more strongly. The stone-work had progressed to a certain extent, and brick-work was required. If this brick-work was necessary to the security of the stone-work, it was a gross act of negligence to proceed further with the stone-work until the brick-work had been done; and if the hypothesis be true, that the brick-work was thus necessary, then the evidence shows that this act of negligence was committed. Had the stone-work been stopped until the brick-work had been done, it could not be claimed that there would have been any such injury resulting from the omission to do the brick-work in time. The only proper and natural damage resulting from the delay in the brick-work, would be a corresponding delay in the stone-work. If, then, the contractor for the stone-work rashly and carelessly goes on with the structure, piling stone upon stone, without the proper foundation, until it falls, he surely can not charge his loss on another; and his act of rashness and carelessness is the immediate and direct cause of an injury to third persons from the fall.

There is still another circumstance; the cornice overhung, for a short distance, the public street. The projection into and over the line of the street, for a short distance, of doorways, cellar-ways, and, particularly, of the eaves or cornices of houses, is a thing quite common in cities; and while, doubtless, it may be, and perhaps should be, regulated, if not entirely restrained, by municipal authority, we are not aware that such projections, for such purposes, when constructed with due care and proper precaution, have been held to be, in themselves, nuisances. While, undoubtedly, they may become nuisances, if in extent unreasonable, or if not properly constructed, we do not suppose there is much doubt as to the principles of law applicable in such cases.

It is not important to inquire in whom is the fee of the street, whether in the county, or in the city, or in the adjoining proprietors. Wherever it may be, it is in trust as a street

for those interested, and each party has a right to use it so as not to interfere, in any way, with its proper use by others, and as it may have been intended he should use it, in connection with his rights and position. A passer-by has an interest in the street, and so has the owner of a lot abutting; and the rights and interests of the latter have been considered so important that it has been deemed just and fair that he should be charged specially with the expense of grading, paving, and lighting. He has, then, the same right of way as the passer-by; he has, also, a right of ingress and egress, for himself and his property, for all purposes and with all improvements as to the mode of using the right—the only restriction being that the right must be exercised reasonably, and so as not to interfere with the rights of others. The particular use must be within the purpose, either of the right reserved or of the right granted, in the dedication of the street, to be ascertained either by its being a known and accustomed use in such cases, or as to any new use, by the reason and nature of the thing. 1 Gray, 186, *Appleton* v. *Fullerton.*

Something has been said in relation to the ordinances of the city, as applicable to this subject. It is sufficient to say that, as to any liability in a civil action, these ordinances have no controlling application. The city has no authority, by an ordinance, to authorize a nuisance, so as to protect a party from liability for it in a civil action, nor to subject a party to liability, in a civil action, for an act from which, but for the ordinance, no liability would arise. No such power is conferred on the municipal authority of a city; it belongs to the general legislation of the State. The city has power to prohibit nuisances, and may declare an act to be a nuisance, and impose a penalty. He who does the act may incur the penalty; but it would not follow that such an act, if not in itself injurious and a wrong to a private citizen, could be made the ground of a liability in a civil action.

A reason for a new trial has been presented in this case, independent of the merits of the matter in controversy.

After the jury had retired, they returned into court, and asked an instruction as to a point of law. This instruction was given in the absence and without notice to the counsel for the plaintiff. It is claimed that the provision of the code, which undoubtedly requires the presence of the counsel, or notice to him, when the court states its recollection as to the testimony, equally applies to an instruction as to any matter of law. We do not think that this view can be sustained, either upon reason and policy, or the language of the code. It is the duty of the court to inform the jury upon a point of law, and, by the statute, this is made imperative. The court is not bound to give its recollection as to testimony, though requested by the jury. It may do so, but this must be done in the presence of, or after notice to, the parties or their counsel. The statute could never have intended to make the discharge of an imperative duty within the peculiar province of the court, depend on the presence of parties or their counsel, or on the ability to serve a notice upon them. We are entirely satisfied that the language of the code does not require or authorize such a construction.

There are some questions which arise upon a bill of exceptions, which appear to have been signed in this case, as to the admission of testimony and the charges of the court. Some of these questions, in the view we have taken of the case upon the motion for a new trial, do not properly arise at this time. They may be again presented on a petition in error. We have now only to decide whether, on the whole case, substantial justice has been done. It may not, however, be improper to observe, that, as to the rejection of testimony in reference to an ambiguity in the contract, growing out of a supposed discrepancy between the specifications and the drawings, we think that all such evidence was properly rejected on the simple ground that there was no foundation for it. Taking the whole contract together, and applying the ordinary rules of construction, there was no ambiguity. The same remark applies to

22

several instructions which were predicated on what is termed a want of accordance between the specifications and the drawings. It was the right and duty of the court to construe the contract between the defendant and Graveson. With this view, the whole contract, and all parts of it, were to be taken together, and its meaning as to any particular matter ascertained. When that meaning is ascertained, it must govern and control the rights and liabilities of the parties. Upon this subject it has been well said, that, in every case it is always matter of construction to discover what is the sense and meaning of the words employed by the parties in the deed. In some cases that meaning is more clearly expressed, and therefore more easily discovered ; in others it is expressed with more obscurity, and discovered with greater difficulty. In some cases it is discovered from one single clause; in others it is only to be made out by the comparison of different, and perhaps distant parts of the same instrument. But after the intention and meaning of the parties is once ascertained, after the agreement is once inferred from the words employed in the instrument, all difficulty which has been encountered in arriving at such meaning, is to be entirely disregarded; the legal effect and operation of the covenant, whether framed in express terms, that is, whether it be an express covenant, or whether the covenant be a matter of inference and argument, is precisely the same; and an implied covenant, in this sense of the term, differs nothing in its operation or legal consequences from an express covenant. 1 C. B. 50 E. C. L. 402–430, *Williams* v. *Burrell;* 5 Q. B. 48 E. C. L. 671, *Aspdin* v. *Austin;* 6 M. & G. 46 E. C. L. 851, *Courtney, et al.* v. *Taylor.*

Upon the principal point in controversy in this case, the language of the specifications was explicit and clear. We think there was nothing in the drawings which the court could properly have permitted to alter the plain meaning of that language. It was the duty of the court so to instruct the jury, and a failure to do so would have been an error

to the prejudice of the defendant. Upon this point the question of negligence, and responsibility for it, really depended, and having been correctly decided, in our judgment, there is no ground to disturb the verdict; and the motion for a new trial should be overruled.

Remanded to overrule the motion for a new trial.