MARY G. SCOTT, Respondent, v. CITY OF SPRINGFIELD, Appellant.

Kansas City Court of Appeals, October 30, 1899.

1. **Master and Servant:** NEGLIGENCE: PLACE OF WORK: JURY QUESTION. The master must furnish the servant a reasonably safe place to work and in default thereof is guilty of negligence. And under the facts in this record the question of the defendant's negligence was for the jury.

2. ———: CONTRIBUTORY NEGLIGENCE: DEFECTS V. RISKS: JURY QUESTION. A servant can not rashly expose himself to danger which he knows and appreciates and hold the master liable for resulting injuries. But the mere fact that he knows of defects will not charge him with the assumption of the risk without a showing of his knowledge of such risk; and where a servant digging a ditch for a sewer beside a water-main merely knows of the defects and condition of the work, his contributory negligence remains a question for the jury though he be a man of good judgment.

3. ——: ——: ——: ——. Where a servant while working in a sewer trench which exposed a parallel water-main, is injured by the bursting of the main, and it appears that blasting at the distance of two hundred feet was the moment previous transpiring, causing vibrations of the earth tending to injure the main, and of this blasting the servant does not appear to have had knowledge, the question of his contributory negligence is a matter for the jury.

4. ——: NEGLIGENCE: BLASTING: EVIDENCE. Where a servant is injured in a sewer trench by the bursting of an exposed water-main, evidence of blasting at a distance of two hundred feet which caused vibrations of the earth is admissible on the question of the master's negligence.

5. Respondeat Superior: INDEPENDENT CONTRACTOR: LIABILITY OF CITY. In a contract for putting in a sewer a city retained through its engineer supervision of how the work should be conducted with the power to discharge incompetent and disobedient employees and thereby made itself liable for the injuries to a servant of the contractor injured by the negligence in the conduct of the work.

Appeal from the Polk Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*Upton & Skinker* and *Arch A. Johnson* for appellant.

(1) There is not a scintilla of evidence to support the material allegations. Nor was there any attempt to support them. But against appellant's objections, the court permitted the respondent to attempt to make a totally different case, and submitted an entirely different case to the jury by instructions. This gross error needs neither argument nor citation of authorities. Meriwether v. Cable Co., 45 Mo. App. 528; Jacquin v. Cable Co., 57 Mo. App. 320; Woods v. Campbell, 110 Mo. 512; Yarnell v. Railway, 113 Mo. 570; Bohn v. Railway, 106 Mo. 429; Gurley v. Railway, 93 Mo. 445; Melvin v. Railway, 89 Mo. 106; McCarty v. Rood Hotel, 144 Mo. 397. (2) To hold, as the court did in this case, that to locate a sewer ditch near to, and parallel with a water-

main, was negligence on the part of the city engineer, is against reason as well as law. (3) Plummer was an independent contractor, and the city can not be held for his negligent acts. But the court instructed to the contrary. Crenshaw v. Ullman, 113 Mo. 633; Blumb v. Kansas City, 84 Mo. 112; McKinley v. Railway, 40 Mo. App. 449. (4) Under all the evidence, Scott had full knowledge of the location of the water-main. He examined it and the sewer ditch at noon of the day of the accident. He was thoroughly acquainted with all the details of his work and the character of the soil in which he was working. He declined to have any bracing done. Under these circumstances he assumed all the risks, and if there was any carelessness and negligence, his own improvidence and carelessness contributed directly to his death, and his widow can not recover. Winkler v. Basket and Box Co., 137 Mo. 394; Steffen v. Mayer, 96 Mo. 420; Fugler v. Bothe, 117 Mo. 475; Marshall v. Hay Press Co., 69 Mo. App. 256; Steinhauser v. Spraul, 127 Mo. 541; Watson v. Coal Co., 52 Mo. App. 366; Holloran v. Iron & Foundry Co., 133 Mo. 470; Lucey v. Oil Co., 129 Mo. 32; Hulett v. Railway, 67 Mo. 239; Gleeson v. Mfg. Co., 94 Mo. 201.

*Wolf & Gorman* for respondent.

(1) Where officers or servants of a municipal corporation are in the exercise of a ministerial act, as distinguished from a judicial or governmental function, it is liable for injury resulting from the negligence of such officers, or agents, as in the case of private corporations or private individuals. Bullmaster v. St. Joseph, 70 Mo. App. 60; Whitfield v. Carrollton, 50 Mo. App. 98; Donahoe v. Kansas City, 136 Mo. 657; Murtaugh v. St. Louis, 44 Mo. 479; McCormick v. Railroad, 57 Mo. 433; Detroit v. Corey, 9 Mich. 164. (2) It is the duty of the master to furnish his servant with a reasonably safe place to work, and the servant has a right to rely upon the superior judgment of the master in directing the

work. Smith v. Coal Co., 75 Mo. App. 177; Larson v. Mining Co., 71 Mo. App. 512; Halliburton v. Railway, 58 Mo. App. 28; Watson v. Coal Co., 52 Mo. App. 366; Donahoe v. Kansas City, 136 Mo. 657. If a master was aware of the danger, or could have been by the use of ordinary care and diligence, he will be liable to servants injured therefrom. Bliss, Code Pleadings [3 Ed.], sec. 83a, p. 137; sec. 82, second note; Stanley v. Railway, 114 Mo. 606. (3) All present, participating in tort, are regarded as principals and are held liable as such, and a party may be charged with doing an act himself and be held liable under such charge for being present, aiding and assisting another in doing it. Willi v. Lucas, 110 Mo. 219; Harriman v. Stowe, 57 Mo. 93. (4) When the employer reserves the right to direct the manner of performance in any particular, or where he undertakes to provide any of the instrumentalities, he owes to the contractor and his employees care in that regard. Horner v. Nicholson, 56 Mo. 220; Lancaster v. Ins. Co., 92 Mo. 460; Roddy v. Railway, 104 Mo. 235. (5) Where a contractor has not full control of the work, but has an engineer over him, who directs the work, he becomes a subcontractor, and his employer as well as the contractor are each liable for negligence to the employees. Larson v. Railway, 110 Mo. 234; Chicago v. Joney, 60 Ill. 383; Chicago v. Dermody, 61 Ill. 431; New Orleans v. Hanning, 82 U. S. 220. (6) Where the employee knew the exact condition of the surroundings at the place in which he is directed by the foreman to work, yet where he did not know the danger to which he was subjected, but the foreman did know or could have known by the use of ordinary care and diligence, the master is liable for injury resulting by reason of the failure of the foreman to take the necessary precaution to protect the employee from injury. Sullivan v. Railway, 107 Mo. 66; Railway v. Hannig, 43 S. W. Rep. 508.

SMITH, P. J.—This is an action by the plaintiff, who is the widow of John R. Scott, deceased, against the defendant,

a city of the third class, to recover damages on account of the fatal injuries received by the plaintiff's said husband in consequence of the negligence of the defendant city.

The defendant city entered into a written contract with one Enoch Plummer whereby the latter agreed to lay a sewer pipe on Phelp's avenue in the defendant city. It further appears from the record that the said Plummer was joined with the defendant and filed an answer in the cause. There was a trial in the circuit court which resulted in a judgment for the plaintiff against the defendant city, from which this appeal is prosecuted. As to the other defendant, the judgment was for him; and from that judgment it does not appear the plaintiff prosecuted a cross appeal. The successful defendant was permitted, at this point, to retire from the case.

At the conclusion of the plaintiff's evidence and at the conclusion of all the evidence the defendant city interposed a demurrer thereto, which was overruled by the trial court and the objections so taken by defendant city is renewed here. The propriety of the action of the court in respect to the demurrer can not be intelligently determined without first making some reference not only to the allegations of negligence contained in the petition but as well to the evidence adduced in support of the same. Following an allegation in respect to the entering into the written contract by said Plummer with the defendant city, to which reference has already been made, the petition proceeds in this wise:

"The said Plummer, Johnson and Woolridge negligently and carelessly laid out and began digging said excavation at the intersection of said alley and Phelps avenue aforesaid, eight inches from the line of said water-mains, in loose and rotten earth, and directed the work of excavation in an easterly direction on said Phelps avenue, along the line of said water-main, but in a manner, as the excavation progressed eastward, that carried said sewer excavation against the line of said water-main,

and in contact with same, and over, under and across said main; that is to say, while the line of said excavation started in at that point above indicated, and eight inches south of said water-main at said initial point, and as given by said engineer, concurred in by said inspector, and adopted by said Plummer, it had a general course that carried it obliquely against, on, over and under the line of said water-main, so that in constructing and digging said excavation the water-main aforesaid became exposed along the eastern half of said excavation, and for a distance of fifty (50) feet or more said water-main became, and was suspended in the air without any mechanical support, without braces or props or sufficient pillars, the walls of the excavation being unsupported by braces or props, and said water-main being about seven feet above the bottom of said trench, was dangerous and menacing to the workmen engaged in said trench, and was seen and known to be in such condition by said Johnson, and the said Woolridge, and the said Plummer, at the time.

\* \* \* \* \* \* \* \*

"That the said Johnson, Woolridge and Plummer disregarding their several and joint duties in the premises, carelessly and negligently laid out and carried on said excavation in a manner dangerous to those who were engaged in same, carelessly and negligently failed to prop or support said exposed water-main or to provide said excavation with a proper number of pillars, and carelessly and negligently carried on said excavation, and gave no warning to those who were then working under them of the danger and peril of the situation.

"That while the said Scott was thus laying and cementing said sewer pipe, and while he was in the lawful discharge of his duty, and prosecuting his said work of laying the sewer pipe aforesaid, and while in the act of cementing the joints of said sewer pipe under one of the

pillars of earth left standing in said excavation, and while said water-main was so exposed and suspended, and without notice or warning from any one of the true condition of things, said water-main, borne down by pressure and its great weight, and the weight of water it contained, and by reason of the careless and negligent acts of the said Plummer, the said Johnson, and the said Woolridge, broke, fell and parted at a distance of about twenty-five feet from where the said Scott was then working, causing the water in said water-main to rush into said sewer excavation with such force, rapidity, and violence, as to immediately fill up the said excavation, causing the earth at its sides to cave in and upon said Scott, the water to rush upon, and over him, and thereby suffocated and killed the said Scott."

The facts disclosed by the undisputed evidence were, briefly stated, about these:

Phelps avenue, in said defendant city, runs east and west from Benton avenue to Jefferson street. There is an intersecting alley on the north side of Phelps avenue between Benton avenue and Jefferson street. The contract between the defendant city and Plummer required the sewer to be laid along Phelps avenue and along the alley between the intersecting streets just named. The ditch in which the sewer pipe was to be laid was located by the engineer of the defendant city on the north side of Phelps avenue. Its depth between the terminal points already indicated varied from seven to nine feet and its width was about two feet. It paralleled the six-inch water pipe of the defendant city, located on the same side of the street and which was about four feet below the surface of the street. The sections of said water pipe were thirty-two feet long and were not laid on a direct east and west line between said intersecting streets. In digging the sewer ditch the water pipe at places became exposed to view.

The ditch was dug in four compartments or sections from

thirty-two to thirty-six feet long, separated by bulkheads between each which were left standing up as high as the line of the water pipe. There was a tunnel driven through the bulkheads from one compartment to the next, which was large enough for a man to crawl through. There was a manhole at the center of the intersection of the alley. The plaintiff's husband was employed in laying the sewer pipe in the ditch. On the day of the accident he went down into the ditch near the second bulkhead east of the manhole and crawled into the tunnel under it with the intention of cementing at that point the joints of two sections of the sewer pipe, and while engaged in the work so intended to be done the water pipe between the bulkhead where he was at work and the next one west of him, near the manhole, bursted and filled the ditch with water, by reason of which he was suffocated and drowned. The water pipe seemed to rest all the way along on a solid bench of hard material. At the place where it bursted the supporting bench caved in, or, as expressed by the witnesses, it "sloughed off" and one end of a section of the pipe went into the bottom of the ditch.

The section of the pipe broke just where the spigot end was inserted into the bell. The superintendent of the defendant city's waterworks, who was present and witnessed the catastrophe, testified that it sprung out laterally in the center and then went down into the ditch. No defect was discovered in the pipe. The pressure at the time of the catastrophe was sixty-five pounds to the square inch. The pipe had been subjected at the factory to hydraulic pressure and had stood a strain of three hundred pounds to the square inch.

The sides or walls of the ditch were nowhere shored or braced up in any way. The plaintiff's husband was a man of several years' experience in doing work of the kind in which he was engaged when he lost his life. He was conceded to be a man of excellent judgment. He was asked by Plummer, just before the happening of the accident, whether or not the

ditch needed any "bracing up" or, did he think "it danger-ous?" to which the latter replied: "No! All hell could not shake it." This conclusion was reached after he had walked down on one side of the ditch and up on the other.

The question now is, whether or not the evidence ad-duced by the plaintiff tending to establish the facts which we have just stated is sufficient to make out a *prima facie* case entitling the plaintiff to a submission to the jury? Whether or not the proximate cause of the bursting of the water pipe and the resulting injury to plaintiff's husband can be attributed to the failure of the defendant city or the contractor to shore or brace up the sides or walls of the ditch is a question of fact. We can not say, as a matter of law, that the evidence dis-closes no causal connection between the negligence of the de-fendant and the injury just referred to.

The general rule is that it is the duty of the master to furnish the servant in his employment a reasonably safe place to work and in default thereof he is guilty of negligence; where the facts relating to the negligence are such that reason-able minds may differ with respect thereto the case is one for the jury to determine. It may be that the bursting of the water pipe resulted from the strain to which it was subjected and its own inherent weakness, or from some extraneous cause and not from the failure to brace or shore up the sides of the ditch; or it may be that the bench on which the water pipe rested caved in or sloughed off and thus caused the bursting, and that the same would not have happened but for the failure to brace up the sides of the ditch. The law required of the de-fendant city no more than to furnish the plaintiff's husband a reasonably safe place to perform the work assigned to him, and whether it was guilty of negligence in the performance of this duty it seems to us was a question that ought to be left for the determination of the jury.

But it is argued that since it appears that the plaintiff's husband knew the location of the water pipe and had just be-

fore the accident, not only examined it but the sewer ditch as well, and since, too, he was thoroughly acquainted with all the details of his work and the character of the place in which such work was to be performed and yet declined to have the sides of the ditch braced up, he must be held to have assumed the risk attending the performance of the work in which he was engaged when he lost his life. A servant can not rashly or deliberately expose himself to danger which he knows and appreciates and then hold the master liable in damages for injuries sustained by reason of his rash act. But "it is one thing to be aware of defects in the instrumentalities or place furnished by the master for the performance of his services and another thing to know or appreciate the risks resulting or which may follow from such defects. The mere fact that the servant knows the defects may not charge him with contributory negligence or the assumption of risk growing out of them. The question is, did he know, or ought he to have known, in the exercise of ordinary common sense and prudence that the risks and not merely the defects, existed." Cook v. Railroad, 34 Minn. 45; Sullivan v. Railroad, 107 Mo. 66. There is no ground for claiming that the ditch as dug was so dangerous as to threaten immediate injury, or that it was so glaringly defective in its construction that a man of common prudence would not have entered in it to perform the work in which the plaintiff's husband was engaged when injured, or that it was not reasonable to suppose that it might not be safely used by the exercise of skill or care and in such circumstance, even if the plaintiff's husband knew of the defects and imperfections complained of, that would not necessarily preclude a recovery; but whether or not he assumed the risk or was guilty of contributory negligence in going forward with his work of laying the sewer pipe in the ditch was a question of fact to be determined by the jury from such knowledge and the other circumstances in evidence. Doyle v. Railway, 140 Mo. 1;

Bradley v. Railway, 138 Mo. 305; O'Mellia v. Railway, 115 Mo. 205; Mahaney v. Railway, 108 Mo. 191; Bullmaster v. St. Joseph, 70 Mo. App. 60; Smith v. Coal Co., 75 Mo. App. 177.

In this connection there is another question arising on the evidence which may be properly noticed: The intersecting ditch extending north along the alley was nine feet deep and had to be cut through a limestone formation. The plaintiff, over the objections of the defendant, was permitted to prove that in carrying on the work in the ditch in the alley that the contractor, in the forenoon of the day of the accident, had been engaged in blasting at the rock therein with giant powder —one witness testified that he had heard the discharge of a blast there just about a half minute before the accident. The locating of the blasting in the ditch was distant one hundred and fifty to two hundred feet from the place in the main sewer ditch where the accident happened. The water pipe was of cast iron and the testimony was that it could be broken by slight vibration—slight strain; that the vibration of an inch would break a cast iron pipe of that size. It was testified that blasting in the ground will oftentimes cause a vibratory motion therein. It was for the jury to determine whether or not the blasting imparted any vibratory motion to the ground in the vicinity thereof, or, if so, whether or not it extended to the water pipe or the bench on which the same rested along the side of the ditch, and if it did so extend, whether or not such vibratory motion caused the ditch to cave in or slough off, causing the displacement and breaking of the water pipe, or whether or not such vibratory motion would have caused the breaking of the water pipe, if it did cause it, had not the resisting earth and other material been removed from the south side of the water pipe by digging the sewer ditch. It may be that the collapse of the ditch was caused by the blasting in the alley ditch. The defendant knew, or ought to have known, the probable danger that would result to the

ditch from such blasting. It was its manifest duty to have protected its employees from the dangerous consequences of such blasting in such close proxmity to the Phelps avenue ditch and to have braced the sides of the same. Common prudence, it seems to us, would have dictated as much. It can not be said that the plaintiff's husband while engaged in work in the ditch if he knew that this blasting was going on was guilty of such imprudence as would bar plaintiff's right of recovery. It does not appear that the plaintiff's husband knew or anticipated any danger from the blasting, or that any additional risk would result from it. Certainly there was nothing in the surrounding conditions, so far as the plaintiff's husband was apprised, that admonished him that the danger was such as to threaten immediate injury or that it was reasonable to suppose the work in the ditch could not be safely prosecuted by the exercise of care.

This evidence was admissible for the purpose of showing why the contractor and the defendant city in the exercise of due care should have braced up the sides of the sewer ditch. The blasting enhanced the danger and therefore made it still more obligatory upon the contractor and defendant city, in the exercise of proper care, to brace the walls of the ditch and thus guard against such danger. The gravamen of the plaintiff's complaint was that the defendant "negligently failed to prop or support said exposed water pipe, or to provide said excavation with a proper number of pillars," or to support the walls thereof with braces or props. While some of the allegations of the petition as to negligence were perhaps redundant and superfluous, yet it will be seen by reference to them, hereinbefore set forth, that they are sufficient to justify the admission of the evidence to which defendant's objections related. It seems to us, rejecting as surplusage that part of the allegation of the petition wherein it is charged that "the water-main along the eastern half of said water-main became and was suspended in the air without any mechanical sup-

port," etc., still the residue thereof charging specific negligence was sufficient to justify the action of the court in admitting the evidence adduced; and that there was no fatal variance between the allegation of negligence and the proof thereof.

It is further insisted that it sufficiently appears from the evidence that Plummer, the contractor, was an "independent contractor" and that for that reason the defendant city can not be held liable for his acts of negligence. Since the relation of Plummer, the contractor, to the defendant city appears from the written contract entered into between them for doing the work, the trial court was, as a matter of law, authorized to declare what that relation was. The contract contained the following provision:

"The word 'engineer,' as herein employed, shall be construed to mean such person, as shall be designated by the city council, whose duty it shall be to superintend the work in all its details, pass upon, and reject such material as may not be in conformity with these sepecifications, designate when work shall begin, *and how it shall be conducted, discharge incompetent,* or *disobedient employees,* and pass upon all questions as to the intent and meaning of these specifications. The engineer, subject to approval of the sewer committee, may appoint, and place upon the work such inspectors as he may see fit, fully authorized to act for him in his absence."

It is often quite difficult in cases like the present to determine just what relation the contractor sustains to the city; that is to say, whether that of agent, or independent contractor. The general rule is that "one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not of itself unlawful or attended with danger to others according to the contractor's own methods and without his being subject to control, except as to the results of the work, will not be answerable for the wrongs of such contractor, his subcontractors or his servants committed in the prosecution of the work. An independent contractor

\* \* \* is one who renders service in the course of an occupation, representing the will of his employer only as to the *result* of his work and not as to the *means* by which it is accomplished." 2 Thompson on Neg., sec. 22, which was quoted with approval in Crenshaw v. Ullman, 113 Mo. loc. cit. 638. In Blumb v. City of Kansas, 84 Mo. 112, the city had no control over the persons hired by the contractor. The city engineer, as stipulated in the contract, had the right to compel the contractor to discharge any workman who should disobey any directions given by him as to workmanship, or material used or expended upon the work. The contract gave neither the engineer nor the city the right to discharge and this permission had no reference to the manner of the work but only to the workmanship, the character of the work and the quality of the material used. It was held that the city was not liable for the negligent act of the contractor which caused the injury complained of. In McCafferty v. Railway, 61 N. Y. 180, where a railroad company let the contract to an individual to build its entire road, and the blasting complained of was done by the men employed by a subcontractor, the court observed: "Over these men the defendant had no control. It neither hired nor paid them and could not control, direct or discharge them. Hence the rule of *respondeat superior* applies, and the principal for whom the men were working, and by whom they were employed, and not the defendant, is liable for the damage done to the plaintiff." The above excerpt was quoted with approval in Blumb v. City, *supra*.

In Larson v. Railway, 110 Mo. 234, it was said: "It is now an accepted rule that supervision of work may be retained without interfering with the independent action or liability of contractors who have engaged to perform it or subdivisions of it, but in the case at bar the contract, under which the work was done, goes much further. It declares that 'the excavation shall be carried on to such general depth as may be indicated by the engineer; excavations for the trenches and

piers will be made as required from time to time in the progress of the work, and to such an extent as may be indicated by the engineer.' Along with this language are statements that the engineer was 'in charge of the work,' and that the men who refused or neglected to obey his orders were to be discharged by the contractors." It was held that the railway company was bound to respond in damages for the injuries resulting from the negligent acts of the contractor because it was the exercise of the judgment or discretion vested by the contract in the supervising authority which caused the catastrophe. And to the same effect are other cases in this state. McKinley v. Railway, 40 Mo. App. 449; Sackewitz v. Mfg. Co., 78 Mo. App. 144; Lancaster v. Ins. Co., 92 Mo. 460; Fink v. Furnace Co., 82 Mo. 276; Barry v. St. Louis, 17 Mo. 121; Clark v. Railway, 36 Mo. 202; Morgan v. Bowman, 22 Mo. 538; Hilsdorf v. St. Louis, 45 Mo. 98.

Accordingly, in the light of the rulings just referred to, there can be no doubt that Plummer did not sustain to the city the relation of an independent contractor in the performance of the work under the contract. The defendant city, through its engineer, under the contract with Plummer for doing the work therein specified, was vested with discretion as to how the work should be conducted and with power to discharge incompetent or disobedient employees, etc., and therefore no reason is seen why the principle of *respondeat superior* is not applicable to the defendant city.

The case was properly one for the jury and the demurrers to the evidence were rightly overruled. It was, as we think, fairly submitted to the jury under instructions containing correct expressions of law applicable to the case. There were upwards of thirty instructions presented to the court, embracing the various theories upon which the plaintiff and defendant each relied. Out of these, the court gave a sufficient number to very fairly submit every phase of the case to the consideration of the jury. To review each one that was given or refused

would require more space than we are authorized to devote to that purpose in a single opinion in any case. The verdict is manifestly for the right party and if there are erroneous expressions of the law to be found in any of the instructions, such errors are not prejudicial to the defendant on the merits and therefore afford no ground for a reversal of the judgment which must be affirmed. All concur.