## NORA REAMES, Respondent, v. JONES DRY GOODS COMPANY, Appellant.

### Kansas City Court of Appeals, April 6, 1903.

1. **Master and Servant: WORKING PLACE: CLERKS WAITING IN COLD FOR ADMISSION: JURY QUESTION.** What is a reasonably safe place to work, where the evidence is conflicting, is always a question for the jury, but where the evidence is all one way the question is for the court; and the evidence relating to a clerk waiting for the door to open for admission is reviewed and SMITH, P. J., holds the question should go to the jury, but ELLISON, J., BROADDUS, J., concurring, holds that the evidence does not make a case.

2. ——: NEGLIGENCE: EFFECT OF WEATHER: SENSATION: NOTICE. SMITH, P. J., holds that the risk of inclement weather can not defeat an action if the danger was not so patent as to threaten immediate injury or it was reasonable to suppose it could be endured with safety, and that if different persons would draw different inferences and the knowledge of the servant was equal to that of the master, the action would not be defeated and the case should go to the jury; ELLISON, J., BROADDUS, J., concurring, holds that the servant is presumed to have knowledge equal if not superior to his employer of the effect of cold, and his own temperament is better known to him than any one else, and his sensations sound the alarm to himself.

3. ——: ——: INSTRUCTIONS: EXCLUDING FACTS: ALL ONE CHARGE. Where an instruction excludes points raised by the evidence it may be cured by others modifying it as fairly to bring the attention of the jury to such facts, since the instructions are to be considered as one charge.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*Meservey, Pierce & German* for appellants.

(1) No evidence was introduced tending to show that defendant was guilty of negligence. Torpey v. Railway, 64, Mo. App. 387; Stokes v. Burnes, 132 Mo. 214. (2) The court erred in giving instruction number 1, asked for by plaintiff. Short Line v. Tracy, 66 Fed. 931; Mays v. Railroad, 63 Ia. 562 (14 N. W. 340); Hulehan v. Railroad, 68 Wis. 520 (32 N. W. 529); Railroad v. Orr, 84 Ind. 50. (3) Plaintiff assumed whatever risk there was by voluntarily remaining outside of the store. Railway v. Ray, 70 Ga. 674; East Line v. Scott, 68 Texas 694; Hawley v. Railway, 71 Iowa 717; 20 Am. and Eng. Ency. of Law, pages 121, 125; Cummins v. Collings, 61 Mo. 520; Dressler on Employer's Liability, sec. 95; Railway v. Conway, 76 Ill. App. 621; Johnson v. Snuff Co., 41 Atl. 936; Woodley v. Met., etc., Co., 46 L. J. Exch. 521; Worlds v. Railroad, 99 Ga. 283; Railroad v. Moore, 49 Kas. 616; Atchison, etc., Co. v. v. Schroeder, 47 Kas. 315; Bradshaw v. Louisville, etc., Co., 21 S. W. (Ky.) 346; Wormell v. Railroad, 79 Maine 397; Leary v. Boston R. Co., 139 Mass. 580; Sweeney v. Envelope Co., 101 N. Y. 520; Dougherty v. Iron Co., 88 Wis. 343; Fuger v. Bothe, 117 Mo. 501. (4) Plaintiff was guilty of contributory negligence.

*Hollis & Fidler* for respondent.

(1) "However conflicting the evidence may be, the courts will not disturb the verdict if the jury has been properly instructed." Minnier v. Railroad, 167 Mo. 99. (2) The master must furnish the servant a reasonably safe place to wait in as well as to work in, especially when he orders the servant to wait, as was done in this case by order to go from one door to the other. Henry v. Railroad, 109 Mo. 493; Halliburton v. Railroad, 58 Mo. App. 27; Monohan v. Coal Co., 58 Mo. App. 68; Devore v. Railroad, 86 Mo. App. 429. (3)

Instruction No. 1, given for plaintiff, is not subject to the criticism offered. Wendler v. Furn. Co., 165 Mo. 527.

## MINORITY OPINION.

SMITH, P. J.—Action to recover damages for personal injuries resulting from the negligence of the defendant. At the conclusion of all the evidence in the case the defendant requested an instruction in the nature of a demurrer, which was by the court refused. There was a submission of the case under instructions to the jury whose verdict was for plaintiff, and thereupon judgment was accordingly given, and defendant appealed.

The evidence for plaintiff tended to prove about these facts, viz.: The defendant, an incorporated mercantile company, was engaged in carrying on a large and extensive department store wherein it employed something like six hundred and fifty clerks. In the year 1899, in consequence of a disastrous fire, its business was for a short time interrupted and suspended. In the month of November of that year it secured another building in which to resume its business. It had determined to open its store in its new place on December 1, and with that view had, a few days prior thereto, engaged the services of a great many female clerks to help carry on its business then about to be resumed. The day before the opening the plaintiff was employed by defendant to work in the gentlemen's furnishing department. At the time she was employed she was directed to be present at defendant's store promptly on the next morning at 7:45 o'clock, and she accordingly appeared at the front door of its store at the time directed, where she found from 600 to 650 other employees waiting to be admitted to begin work. It appears that of these about 300 were former employees, and the others, like plaintiff, had not been previously in defendant's employment. The former employees were first admitted,

and after them the new ones. The latter, after waiting some time, were directed to go to the south door for admission, but on going there they were denied admission, being directed to return to the north door; and on returning there they were again denied admission, but were directed to return to the south door where they were finally admitted. The plaintiff and her witnesses testified that this occupied from an hour to an hour and a half; that during this time the plaintiff stood on the iron steps in front of the store expecting every moment to be admitted. The air at seven o'clock that morning, according to the report of the United States weather observer, was saturated with moisture, its condition being 85 per cent of moisture out of a possible 100. The wind was blowing from the northwest with a velocity of three miles an hour. The temperature was 33 degrees. The plaintiff while standing in front of the defendant's store waiting to be admitted, as aforesaid, felt no serious discomfort except as to her feet. Soon after her admission she for the first time became aware of the presence of a slight uterine discharge. At the close of that day's business she went to her home feeling quite unwell. The next day a physician was called and he found her suffering from inflammation of the ovaries and sciatica, for which he treated her for several months. He testified that it was probable that she would always suffer from these ailments, and that there was a permanent impairment, etc.

The defendant introduced a great number of its employees as witnesses who testified that the time occupied in admitting its horde of clerks into its store was not more than from fifteen to twenty-five minutes, so that in respect to this material fact there is a wide divergence between the testimony of the defendant's witnesses and those of the plaintiff. So the question now is, whether or not, upon the evidence which tends to show the facts just stated, the court erred in its action in refusing to take the case from the jury? Where there is a de-

murrer to the evidence, every fact must be conceded which it tends to reasonably establish, and in passing upon it the court is required to make every inference of fact in favor of the party offering it which the jury might with any degree of propriety have inferred in his favor. Donohue v. Railway, 91 Mo. 357; Buesching v. Gas Co., 73 Mo. 219; Lee v. Geo. Knapp & Co., 137 Mo. 385.

At the time plaintiff went to defendant's store she was in its employment and acting under its orders. It had directed her to be there promptly at a specified time. If on her arrival there it was inconvenient to it to admit and assign her to work, what duty, if any, did it owe her while she was waiting for directions to enter the store? Defendant knew that she had obeyed its order and was present at its store door waiting to be admitted. It also knew the season of the year and the then prevailing atmospheric conditions. It also further knew, though she did not, the probable time that would be required in admitting and "timing in" the 300 old clerks, and how long she would probably have to wait before she could be admitted. And it also still further knew that she was waiting and expecting every minute to be admitted. It would have been an easy matter for defendant to have announced to plaintiff and the others that their presence would not be required there for the next hour and a half, so that she could have been afforded an opportunity to find a safer and more comfortable place to wait; or it might have directed her, with the others, to enter its large and spacious building and go to some designated place therein to await further orders.

If there is any one rule of law better settled in this State than another, it is that which enjoins upon the master the duty to furnish the servant in his employment a reasonably safe place to perform the work assigned to him. And the same rule further provides that a default in this on the part of the master makes him

Reames v. Jones Dry Goods Co.

guilty of negligence. What is a reasonably safe place to work, where the evidence is conflicting, is always a question for the jury; but where it is all one way it is one for the court. And where the facts relating to the negligence are such that reasonable minds may differ in respect thereto, the case is one for the jury. And the general rule just stated, defining the master's duty to the servant, extends not only to such unnecessary and unreasonable risks which are in fact known to him, but to such as he might reasonably be expected to know under the facts and circumstances connected with the service. The hour and a half that plaintiff occupied the street in front of defendant's store was with its knowledge and by its direction. I can not see that the case would have been different if the defendant after employing plaintiff had assigned her to stand for that length of time in front of its store and hand printed circulars to those passing by, announcing that its store would be open the next day for the sale of rare bargains, etc., or to perform any other service.

It was necessarily implied from defendant's order to plaintiff to appear promptly at the front door of its store at the time specified, that she should be there ready to enter when required to do so, whenever that should be, so that the order in effect was for plaintiff to wait at the front door until it should suit the convenience of the defendant for her to be admitted; hence, plaintiff was so in waiting in obedience to defendant's order as master to a servant in its employment to do a particular thing at a certain place. It was probably as important in the transaction of the defendant's business that the plaintiff should wait on the outside at that time, as it would be later on for her to do something else on the inside which the exigencies of its business demanded. And whether or not the place at which plaintiff was ordered to wait was a reasonably safe place to do so, in

Vol 99 app—26

view of all the facts and circumstances detailed in the evidence, was a question for the consideration of the jury.

It does not appear that the plaintiff knew the risk that was to be incurred by reason of the exposure incident to the waiting. Mere knowledge that the weather was inclement and that a risk was to be incurred by exposing herself to it as a matter of law was not sufficient to defeat plaintiff's action if the danger from waiting was not so patent and obvious as to threaten immediate injury, or if it was reasonable to suppose she might, by the exercise of due care, safely wait at the place directed until bidden by defendant to enter its store. Smith v. Coal Co., 75 Mo. App. 177; Scott v. Springfield, 81 Mo. App. 312; Compton v. Railway, 82 Mo. App. 175; Stalzer v. Packing Co., 84 Mo. App. 565; Thompson v. Railway, 86 Mo. App. 148; Devore v. Railway, 86 Mo. App. 429; Hamman v. Coal Co., 156 Mo. 232; Doyle v. Trust Co., 140 Mo. 1; Donahoe v. Kansas City, 136 Mo. 670; Huhn v. Railway, 92 Mo. 440; Devlin v. Railway, 87 Mo. 545; Stoddard v. Railway, 65 Mo. 519. Even though the evidence may be said to be such as to justify reasonable minds in drawing different inferences therefrom as to whether plaintiff did not know the danger of waiting, yet if her knowledge in that respect was equal to that of defendant, this would not of itself defeat a recovery. Smith v. Coal Co., ante; Thompson v. Railway, ante. And the rule is, that where the facts with respect to the negligence are such as reasonable minds might differ, the case is one for the jury. Thompson v. Railway, ante, and cases there cited.

It is suggested that plaintiff might have avoided exposure and consequent injury had she taken the precaution to enter any one of the neighboring shops or stores, and there waited until the class of clerks to which she belonged was called by defendant. But it will be remembered that there were several hundred of these

clerks and it is not likely that the proprietors of such shops and stores would have permitted their space to have been occupied by such clerks to the probable inconvenience of their own employees and customers. And besides this, had plaintiff not been present when called to enter, the doors might have been closed to her when she reached there from where she had been waiting, so that she would have lost her place. The defendant's store on that day was closed except when opened to admit employees, and it was not safe for the plaintiff to be away when the defendant opened its doors to its employees of her class; and especially so, since she had no intimation when the doors would be open or that she might absent herself for any particular length of time. It is difficult to discover how she could have well taken any other course than that which she did. As to whether she was guilty of contributory negligence in waiting on the outside of the store door until it opened to her as directed, was a question for the jury to determine under all the circumstances in evidence. In any view of the evidence which I have been able to take I must conclude that the plaintiff was entitled to a submission to the jury.

The defendant objects to the plaintiff's first instruction on the ground that it is so framed as to exclude the points raised by its evidence. This objection would be well taken (Clark v. Hammerle, 27 Mo. l. c. 70; Fitzgerald v. Hayward, 50 Mo. 516; Torpey v. Railway, 64 Mo. App. 382; Griffith v. Conway, 45 Mo. App. 574; Schoen v. Kansas City, 65 Mo. App. l. c. 134; Price v. Barnard, 70 Mo. App. l. c. 180), were it not for the fact that the court gave others so modifying it as to fairly bring to the attention of the jury the affirmative defenses pleaded by the defendant; so that the instructions considered as one charge fully presented both sides of the case to the jury. Lewis v. Humphries, 64 Mo. App. l. c. 473; Voegeli v. Pickle Marble & Granite Co., 49 Mo. App. 643; Schroeder v. Michel, 98 Mo. 43.

The answer pleaded contributory negligence and the assumption of the risk, and the plaintiff's said first instruction, as well as her second, clearly submitted the first of these defenses; and the defendant's third, fourth and fifth fully submitted the latter.

The only criticism to which the action of the court could possibly be subject in respect to the giving and refusing instructions is that those given for defendant are far more favorable to it than they ought to have been.

No reason appearing why the judgment should be disturbed, it should accordingly be affirmed.

## Majority Opinion.

ELLISON, J.—In addition to what Judge Smith has stated that the evidence for plaintiff tended to show, it should be said that the testimony of plaintiff herself showed that she was a woman of mature years—a married woman—and that the morning she charges that she was negligently exposed to the weather by defendant was the time for the beginning of her menstrual period; and that it came upon her shortly after getting into the store. The weather was not at the freezing point, though it had rained the night preceding and the atmosphere was very damp. The wind was not blowing a "gale," as expressed by plaintiff's counsel, but only three miles an hour which is, perhaps, about the distance covered by a person in an ordinary walk, in the same length of time. Plaintiff says she waited in front of defendant's store, as near as she could state, for about an hour and a half. That there were business houses immediately on the opposite side of the street into which she might have gone, and where she could have waited until defendant opened the doors of its store; and that she could have seen through the glass in the doors of these stores when the doors of defendant's store opened for the admission of the several hundred waiting clerks.

She gave two reasons for not going into one of these stores: one was, that she was expecting the defendant's doors to open at any moment, and if she was not there she was afraid she would lose her employment; the other was, that it never occurred to her that she was likely to get cold standing there as she was thinking about her work, though, "of course I knew I was cold."

I think plaintiff must fail in her case from her own showing. We stated in Hyatt v. Railroad, 19 Mo. App. l. c. 293, that where one was hired to work in the cold, though with a promise to provide fire, he could not "deliberately permit himself to freeze though surrounded with material to prevent it." Plaintiff was a married woman of mature years and we must assume she was, at least, of ordinary intelligence, and yet she remained within a few feet of comfortable shelter where she would have easily protected herself from whatever inconvenience and discomfort there was in remaining in the street. Her first reason for not seeking this shelter is no excuse at all. She says she was afraid she would lose her place with her employers if she was absent when the doors opened. But there were several hundred of them and plaintiff, on seeing from across the street that her fellow-employees were entering, could, of course, have got over and entered before any great number had preceded her; indeed, without it being known to defendant, or perhaps any one else, that she had withdrawn from the crowd. It would be an absurdity to suppose that it would have made any difference to defendant whether she was among the first or the last of the large number who entered when the doors opened.

Her second reason, if it excuses her for voluntarily staying in the street, ought certainly to excuse defendant for letting her stay. If the state of the weather was such as not to make it occur to her that she would get cold, or that she would become sick from getting cold, why ought it to have occurred to defendant? Of the

two, if there was guilt to be attributed to either, it was to her: for she knew it was a delicate period of the month for her, a thing which defendant could not know.

In Yazoo Transfer Co. v. Smith, 78 Miss. 140, several servants were directed to load eighteen bales of cotton onto a boat. It was a very cold day and the fingers of one of them were frozen in consequence of the exposure in doing the work and had to be amputated. He brought his action for damages. The court said: "The able and ingenious arguments of counsel fail to parallel this case with cases involving superior knowledge of the person in command, and, as two of them concede, the statute of 1898, p. 85, in reference to unsafe machinery, ways or appliances, or improper loading of cars, has no application. The laborer must be presumed to have knowledge equal, if not superior, to his employer of the effect of cold upon his feelings and person. His own temperament is better known to him than any one else, and his own sensations sound the alarm to himself. Men are presumed to have ordinary common sense, until the contrary is shown, and the law does not speculate on degrees of knowledge about weather."

To permit a recovery in this case would make the employment of servants much too hazardous for the practical operation of private business.

The judgment should be reversed. *Broaddus, J.,* concurs.