LOUIS GREEN, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 19, 1906.

1. **PASSENGER CARRIERS:** *Negligence: Freight Train: Cars.* In regard to a passenger on a freight train, the question of the carrier's negligence will be decided as if he had been on a regular passenger train, except that the nature of the freight train, its inconveniences and dangers, will be considered in determining the culpability of the carrier's conduct; and the same may be said in regard to the character of the car in which the passenger is riding.

2. ———: ———: ———: **Delay: Petition.** A petition and instructions are considered and it is held the question of unnecessary and negligent delay in transporting the plaintiff was properly submitted to the jury with the proviso that they take into consideration the character of the train and of the car in which he was riding.

3. ——: ——: ——: **Exposure to Cold: Contributory Negligence.** The excuse of a passenger riding in a box car in a freight train, which was delayed near a station, for not leaving the car and going to the station to keep himself warm, is considered and held sufficient to go to the jury on the question of his contributory negligence.

4. ——: **Evidence: Ticket Agent's Directions: Passenger's Conduct.** What was said by the carrier's ticket seller to the passenger on purchasing his ticket, in relation to his transportation to his destination, is admissible in evidence though in this case the conversation was chiefly valuable as it bore upon the passenger's conduct in remaining upon the train because he expected it to move at any time.

5. ——: **Carrier's Rules: Passenger's Knowledge.** The passenger is not expected to know the rules of the carrier governing the meeting of trains at junction points and the transfer of cars from one train to another, but upon his acceptance as a passenger he has a right to expect that he will be carried to his destination with reasonable dispatch and not be delayed for more than twelve hours in making a distance of six miles.

6. ——: **Damages: Injury to Health: Natural and Probable Result.** A carrier must know that exposure to severe cold for a whole night would in all probability injuriously impair the passenger's health, and is therefore liable since it is not necessary that the carrier should know just what form the injury would likely assume.

7. ——: **Practice: Instruction.** Where the appellant asks an instruction and invites the error contained therein, the giving thereof furnishes no ground for disturbing the judgment.

### On Rehearing.

1. **Passenger Carriers: Petition: Negligent Delay: Evidence.** A petition by a passenger against a carrier for injury to health by reason of exposure to cold is reviewed and it is held that the gravamen thereof is not a failure to furnish a proper car but a breach of duty in not transporting him without unnecessary delay; and an unnecessary enumeration of the particulars of an injury or of how the injury was caused does not make such allegations the cause of the action and, though they are untrue, will not prevent a showing of those that are true.

2. ——: **Exposure to Cold: Contributory Negligence: Instructions.** *Held*, that the question of plaintiff's contributory negligence in failing to leave the car where he was exposed to cold and to go to the station where there was fire, was submitted by

121 App—46

an instruction too favorable to the defendant, and there is no ground of complaint on that score; also, that an instruction containing some correct propositions of law but which in effect ignores the plaintiff's reason for his conduct, is properly refused.

Appeal from Cole Circuit Court.—*Hon. James E. Hazell,* Judge.

AFFIRMED.

*George P. B. Jackson* for appellant.

(1)  There was no delay, since the car in which the plaintiff elected to travel was moved according to the regular schedule for handling that business.    Fetter on Carriers of Passengers, p. 296.    (2)  The alleged delay did not cause the injury complained of. (3)  The defendant was not required to provide any contrivance for warming the freight car.  (4)  The car was not locked and sealed and plaintiff was not detained therein.  He was at liberty to leave the car at any time and if he sustained any injury from remaining therein, it was the result of his own conduct, and not of the defendant's.  (5)  The evidence showed that the plaintiff did not sustain any injury on account of remaining in the car, because he admitted that he had rheumatism and heart trouble before that time, and expert medical testimony established that lumbago and grippe would not result from spending a night in a box car, but that grippe is an infectious disease, contracted from germs, and lumbago, like rheumatism, is a disease of the blood; is not of quick development, and even if he had contracted a cold, it was more probable that it resulted from the exposure in driving across the country three days after remaining in the car, than from the exposure in the car.   Whitehead v. Railroad, 99 Mo. 263; Berry v. Railroad, 124 Mo. 223, and cases cited; Holt v. Railroad, 84 Mo. App. 443; Sayton v. Railroad, 98 Mo. App. 494; Fetter on Carriers, p. 34; 4 Elliott on Railroads, pp. 2553 and 2562; Guffey v. Railroad, 53 Mo. App. 469;

Wagner v. Railroad, 97 Mo. 521; Moore v. Railroad (Mich.), 72 N. W. 1112; Dorsey v. Railroad, 83 Mo. App. 528; Erwin v. Railroad, 94 Mo. App. 289; Lawson v. Railroad, 64 Wis. 447; Jenkins v. Railroad, 41 Wis. 112; Railroad v. Johnson, 41 Pac. 641.

*Silver & Brown* for respondent.

(1) The respondent was authorized under the circumstances to take passage as a passenger on the freight train; the station agent sold him the ticket for that train and the conductor permitted him to ride on it, and consented to his riding in the car with his horses to look after the same. Whitehead v. Railroad, 99 Mo. 263. (2) If respondent was on the train in violation of the rules of the defendant, that was a matter of defense; no such defense was pleaded in the answer nor was it attempted to be made during the offer of the evidence. Whitehead v. Railroad, supra. (3) A station agent can bind its principal within the limits of his apparent authority. Prewitt v. Railroad, 62 Mo. 627; Harrison v. Railroad, 70 Mo. App. 338. (4) Where one is accepted by the servants of the railroad on one of its freight trains as a passenger he is entitled to all the rights and privileges of a passenger, taking into consideration the character of the train on which he is being transported. McGee v. Railroad, 92 Mo. 208; Wait v. Railroad, 165 Mo. 612; Tibby v. Railroad, 82 Mo. 292; Randolph v. Railroad, 18 Mo. App. 615; McGinnis v. Railroad, 21 Mo. App. 448. (5) The petition charged (which was the gravamen of the action) that it was defendant's duty to transport the plaintiff from Estill to Boonville with reasonable expedition and dispatch, and that it committed a breach of said duty in not doing so. The question of the unreasonableness of the delay was one for the jury. Instruction numbered 1 given for the plaintiff is abundantly supported by the authorities. Dawson v. Railroad, 79 Mo. 296; Tucker v. Railroad, 50 Mo. 385; Weed v.

Railroad, 17 N. Y. 362; Sears v. Railroad, 14 Allen 433; Schwab v. Union Line, 13 Mo. App. 159; Steam, etc., Co. v. Gas Co., 60 Mo. App. 154; Tower v. Pauly, 51 Mo. App. 75; Gilsey v. Railroad, 83 Ky. 519; Tower v. Pauly, 51 Mo. App. 83; Rubber Co. v. Rubber Co., 74 Mo. App. 271; Burks v. Stam, 65 Mo. App. 455; Bailey v. Emerson, 87 Mo. App. 220; Stoop v. Railroad, 93 Mo. App. 605; Central Saving Bank v. Shine, 48 Mo. 467. (6)   The evidence of plaintiff is express and explicit to the effect that the station agent told him that the train "was going to Boonville, and that it would be at Boonville at 5 o'clock that evening, and the testimony of Mrs. Green was to the same effect.   Read v. Railroad, 60 Mo. 207.

ELLISON, J.—The plaintiff brought the present action to recover damages on account of being negligently delayed on one of defendant's trains, whereby he was exposed in one of defendant's cars to extremely cold weather during a night in January, 1902.   He recovered judgment in the trial court.

It appears that plaintiff, a man sixty-six years old, in company with his wife, was travelling in a vehicle drawn by two horses from the northern part of the State to his home in Camden county, south of the Missouri river.   That he arrived near that stream at a place on defendant's line of railway called Estill in the afternoon of January 5th and there learned that he could not cross the river, as the ferry was not running.   Estill was two miles north of a station called Franklin Junction and about five miles north of Boonville, a city on the south bank of the river.   On the next afternoon, he made inquiry of defendant's agent at Estill and was informed that his horses and vehicle could be shipped to Boonville for eight dollars and that he, the agent, did not know whether he would be taken without further charge, but that he could ascertain from the conductor when the

train came in. The horses and vehicle were then loaded in a closed freight car with a sliding door opening at the side. This door was fastened partially open, presumably for ventilation. The car was without heat of any kind. The conductor informed plaintiff that he must purchase tickets for himself and wife. That she must get in the caboose and that plaintiff could ride in the car with his horses to care for them. The agent at Estill informed plaintiff when he was inquiring about his transportation that he would reach Boonville at five o'clock that evening. The evidence did not show the exact time when the train left Estill, but tended to show that it was between four and five o'clock and that it reached Franklin Junction at twenty minutes after five and that the car, in which plaintiff was, remained there all night, not getting across the river to Boonville until five o'clock next morning. When the train arrived at the Junction, the conductor told plaintiff's wife that she must get out of the caboose, which she did. That he offered no assistance and that she did not know where or how to find the car in which plaintiff and the horses were, but with the aid of two strangers she found it and with their assistance got into it with her husband. The car was moved further along, a few yards, and there kept all night, plaintiff and his wife remaining in it. The conductor nor any other of defendant's servants gave them any information concerning the delay or when they would be taken on to Boonville. The night was severely cold and plaintiff (as well as his wife) suffered much, in consequence of which injuries and disabilities ensued. He stated as his reason for not leaving the car that, "After it got dark, the wind was blowing and the cars were passing every few minutes, and I knew it was certain death to go out, I could not see good, or hear good, and would be run over with the trains and knew I best stay in the car, and I thought every minute the

train would start, I expected the man to do what he agreed to do after I done what I agreed to do."

The defense pleaded was a general denial and that, if plaintiff got into the car and remained for any length of time and was exposed to the cold, such conduct was voluntary and without any fault, suggestion or knowledge of defendant. And that if plaintiff suffered any pain or impairment of health, or expense in consequence of such exposure, it was the result of his own reckless, careless and negligent conduct contributing thereto. The theory of the defense, as made to appear in the brief and argument, is that there was no delay since the car, in which plaintiff elected to travel, was moved according to regular schedule for handling business. That, if there was delay, it did not cause the injury. That defendant was not required to heat a freight car. That plaintiff could have left the car at any time during the delay. We will dispose of the case on the concession that there was evidence in defendant's behalf tending to support its defense.

The fact that plaintiff was being carried by a freight train will not excuse defendant from liability for negligence. And the question of negligence will be decided as if he had been upon a regular passenger train; except the nature of a freight train, the inconvenience and danger necessarily attending such mode of conveyance, will be considered in determining whether the carrier's conduct was culpable. [Whitehead v. Railroad, 99 Mo. 263; Wait v. Railroad, 165 Mo. 612.]

Some stress is laid upon the fact that plaintiff occupied a freight car instead of the caboose. But that will not relieve the defendant if it had been negligent. A railway company was held liable to persons accepted as passengers on an open flat car, though the conductor had suggested to them that a box car would be a better place. [Wagner v. Railway, 97 Mo. 512.] And liable

to one, accepted as a passenger, riding on the top of a freight car. [Tibby v. Railway, 82 Mo. 292.]

We, however, readily concede that if one, with the consent of the conductor, voluntarily rides in a freight car, he must accept the consequences which naturally follow from such position, which are not directly influenced or brought about by the negligence of the carrier. Thus, the plaintiff in this case had no right to expect that heat would be provided for him in the car in which he chose to ride. And we do not understand that counsel put his right to recover on such ground, although it was stated in the petition that there was no stove or heat in the car. It may be said that the absence of heat from the car caused the plaintiff to suffer from the cold. But that fact was known and voluntarily accepted by plaintiff. His complaint, as submitted to the jury, is a negligent delay of more than twelve hours in carrying him a distance of only five or six miles, whereby he was exposed to the cold for such an unnecessary time as caused his suffering and consequent impairment to health. So we further concede that a passenger, in the absence of a binding engagement by the carrier, had no right to expect that he will be carried in as short a time by an ordinary freight train as by a passenger train. But he may expect that there will be no unnecessary and negligent delay in his transportation on a freight train. The question of negligent delay was for the jury to determine and it was properly submitted to them, consistently with what we have written, by the court's instruction wherein they were told to take into consideration the character of the train in determining the question whether there was any negligence.

The defendant insists that the delay was not proximate cause of the injury, of which plaintiff complains,

and argues that there was a station house at the Junction where plaintiff was detained, which was lighted and warm, and that plaintiff could have left the car and made himself comfortable at the station. That suggestion, disconnected from other evidence and circumstances, is not only plausible but reasonable. For it ought not to be said that one may have relief at hand and refuse to accept it. Or have a place of safety near by and refuse to go to it. So we decided in Reames v. Jones Dry Goods Co., 99 Mo. App. 404. But plaintiff had been told by the agent, from whom he purchased his ticket, that he would get to Boonville at five o'clock. He had only got to the Junction (nearly half way) at a few minutes after five, yet he had in mind that he was to be carried with reasonable expedition to Boonville and he gave the explanation of why he did not leave the car, which we have set out above. We regard it as a reasonable explanation of his failure to seek more comfortable shelter. In Heirn v. McCaughan, 32 Miss. 17, it appears, at page 21 of the report, that plaintiff, with his wife, had been informed by defendant's agent that one of their boats would stop for passengers and that they procured transportation and proceeded to the "pier-head at the outer end of the wharf" to await the boat. That it was necessary for passengers to remain at the pier-head in order to be certain to get aboard. That the pier-head was a mile from a hotel and that plaintiff and wife went to a house at the pier-head at about nine o'clock at night, as the boat usually passed between nine and two o'clock. The weather was cold and the house was unheated. No boat landed, but plaintiff and wife waited all night and suffered severely from the cold. They recovered damages and the circumstance that they remained all night at the pier-head in the cold, instead of going to the hotel, was not mentioned by the court as a reason against their right to exemplary damages. They were in constant expectation that a boat would come and feared to leave

their place, though they could have gone to a hotel. So, here, plaintiff was all the time thinking his car would move at any moment and that it was necessary for him to remain in it. Though the car was standing a short distance from the station house, the difficulty of getting aboard a freight train after night is no easy matter for a man of plaintiff's age, and we are satisfied that his conduct should not be considered, as a matter of law, as contributing to his injury. It is true that he arrived at the junction before it was fully dark, but it could not be reasonably supposed that he should immediately conclude that he was going no farther that night and immediately leave the car.

Evidence of what was said by a carrier's ticket seller to the passenger when purchasing his ticket in relation to his transportation to his destination has been held to be admissible. [Railroad v. Winter, 143 U. S. 60.] But it seems clear to us that, on the matter of contract, no evidence was needed in this case as to what the defendant's agent may have said to plaintiff about the time he would arrive in Boonville. The law itself would imply a reasonable time, taking into consideration the character of train, and it was upon that theory plaintiff submitted his cause. The value of what the agent said to plaintiff rested chiefly in the effect it had upon the latter's conduct afterwards in remaining in the car and shutting out from his mind that he would be detained all night.

We find no excuse for defendant in the suggestion that plaintiff was carried according to the schedule for service of its freight trains. It seems that the train, upon which plaintiff took passage at Estill, did not, under the rules of the company, go farther than the junction and that cars of freight were taken up at the latter point by trains coming in on the main line and taken thence on south. It is said that plaintiff's train got to the junction too late for a train on the main

line going south (whether passenger or freight would make no difference), which generally left that place at about five o'clock, and that no other train went south until the one, which hauled plaintiff's car next morning, save a passenger train which passed during the night. But plaintiff should not be expected to know the rules of the defendant carrier governing the meeting of other trains at junction points and the transfer of cars from one to the other. [Railway v. Winter, 143 U. S. 60.] In the circumstances, which transpired when plaintiff purchased his ticket and was accepted as a passenger, he had a right to expect that he would be carried over the six miles distance to Boonville with reasonable dispatch, and certainly not to be delayed on the road for more than twelve hours.

We regard the injury to plaintiff's health as being proximately caused by the defendant's negligence. In the situation, in which he was placed at the junction, as described by him in the foregoing quotation from his testimony, the defendant must have known that exposure to the severe cold during all that night would in all probability result injuriously to him and perhaps impair his health. It was not necessary that defendant must have known just what form of injury would likely result to plaintiff, but, if it left him in such situation as that the exposure would probably injure him, and it did in fact so result, a liability was incurred. The case of Weed v. Railroad, 17 N. Y. 362, was where a husband and wife, passengers on a carrier's train, were to be carried a distance of thirty miles. After proceeding seven miles, the train was detained all night and the passengers did not reach their destination until next afternoon. The weather was stormy and the wife suffered greatly, whereby her health was impaired. The carrier was held liable. In M. & O. Ry. Co. v. McArthur, 43 Miss. 180, the passenger on a freight train, afflicted with chronic rheumatism, was carried in the

night five miles beyond his destination and compelled to walk back through the rain. He was held entitled to recover. In Williams v. Vanderbilt, 28 N. Y. 217, a passenger was delayed in an unhealthy climate and exposed to the sun and rain, whereby he was made sick. Such sickness was held to be an element of his damages resulting from the negligence. [See also Norfolk Ry. Co. v. Lipscomb, 90 Va. 137; International Ry. v. Harder, 81 S. W. 356; Coleman v. Railroad, 138 N. C. 354; Galveston Ry. v. Tuckett, 25 S. W. 150.]

The propriety of the instructions, which the court gave for the plaintiff, and the impropriety of those offered and refused for defendant are sustained by what we have already written. But defendant was given instruction (No. 4) not in harmony with our view of the case and it should not have been given. As, however, the error was committed at defendant's request and was much in its favor, it furnishes no ground for disturbing the judgment.

After a careful consideration of the whole record, we conclude the judgment should be affirmed. All concur.

### ON REHEARING.

ELLISON, J.—It not being the duty of a carrier to heat its freight cars for the comfort of passengers when it has a caboose in which such person might ride, the defendant seeks to avoid liability by urging that the cause of action which plaintiff has stated is that it furnished him a freight car which was not heated and that it confined him in such car by locking the door so that it could not be opened and so that he could not get out in consequence of which he suffered from the cold, etc. The part of the petition necessary to examine in relation to this claim is as follows:

"That on January 6, 1903, and about four o'clock in the afternoon of said day, plaintiff was received and

accepted as a passenger, he paying the customary fare therefor, on one of defendant's trains to be transferred from said station of Estill to said station of Boonville aforesaid, being a distance of about four miles. That thereupon it became the duty of defendant to transport and convey plaintiff, being said passenger aforesaid, from said station of Estill to that of Boonville with reasonable expedition and dispatch.

"That defendant failed in its duty in that regard and committed a breach thereof in that instead of so transporting plaintiff with reasonable expedition and dispatch, it did so delay and procrastinate his transportation between said stations aforesaid; that said train on which plaintiff was a passenger as aforesaid did not arrive at said station of Boonville until five o'clock in the forenoon of January 7, 1903, that is to say, thirteen hours, or thereabouts, after its departure from said Estill station. That plaintiff was thereby detained and delayed in the course of his said transportation between said stations aforesaid for a period of thirteen hours or thereabouts.

"That the car in which plaintiff was being transported by defendant as aforesaid was without a stove or other contrivance for warming the same; that the weather at said time was intensely cold; that said car, after plaintiff took passage thereon as aforesaid was locked and sealed by defendant's servants so that plaintiff could not get out of it; that plaintiff while detained in said car and by reason of said detention suffered great discomforts and annoyance, and also great physical pain caused by the extreme coldness of the weather to which he was exposed.

"Plaintiff states that by reason of defendant's breach of duty to him as hereinbefore set out, plaintiff has suffered great mental and physical pain; his health has been permanently injured," etc.

In our opinion the gravamen of plaintiff's com-

plaint, as thus stated, is not a failure to furnish a proper car, but is a breach of duty in not transporting him without unnecessary delay. The duty to convey with dispatch is specifically charged; and immediately upon the heels of such allegation is the charge of a breach of such duty. Then follows the manner of the breach. The pleader then in order to show the disastrous and damaging consequences of such breach alleges that the car in which plaintiff was being carried was unheated; that the weather was cold, and that he could not get out of the car because of its being locked, whereby his suffering and inconvenience followed. It may be he need not have gone into such particulars. Especially should he not have stated that he was locked in the car when he was not. But an unnecessary enumeration of particulars of an injury, or of how an injury was caused, is, of course, no reason for construing such allegations as the cause of action. They clearly appear to be mere consequences of the cause of action, viz., the breach of duty in a negligent delay. Nor will such unnecessary statements, though some of them are not true, prevent a showing of those which are true. The pleader nowhere attempts to place his recovery on the ground of a breach of contract. He states that which brought about the relation of carrier and passenger as a foundation for — as showing his right to make complaint of the breach of duty. That he may thus frame his petition is well-settled law. [Atlantic Ry. Co. v. Laird, 164 U. S. 393, 398.]

So far as regards the issue of contributory negligence advanced by defendant, founded on plaintiff having voluntarily remained in the car when (as is claimed) he should have left it, we find that the defendant had the benefit of an explicit instruction on that head. An instruction, which, as written, was too broad in defendant's favor, since it should have been limited by a proviso containing the excuse or reason given by plaintiff

why he did not leave the car.    Defendant's refused instruction numbered 5, was properly refused.    While containing some correct propositions, the effect of it was a direction to the jury to ignore plaintiff's reason for not leaving the car.

We do not deem it necessary to refer to other points and suggestions made by defendant though we have given them all careful consideration.    We conclude that the judgment should be affirmed.    All concur.